THE STATE, MARIA MANGLES ET AL., PROSECUTORS, v. THE HUDSON COUNTY BOARD OF CHOSEN FREEHOLDERS ET AL.

THE STATE, ISAIAH H. GAUTIER ET AL., PROSECUTORS, v. THE HUDSON COUNTY BOARD OF CHOSEN FREEHOLDERS ET AL.

1.  Under the constitutional provision that "private property shall not be taken for public use without just compensation, but land may be taken for public highways *as heretofore*, until the legislature shall direct compensation to be made," the practice of the state, continued from 1716

until after the adoption of the constitution in 1844, not to lay out roads of a greater width than four rods, is a limitation of the legislative power to take land for highways without compensation.

2. Just compensation for taking part of an entire tract of land for public use, cannot be ascertained without considering all the proximate effects of the taking, viz., the withdrawal of the part taken from the dominion of the former owner, the damage done to the residue by the separation, and the benefit immediately accruing to the residue from the devotion of the part taken to a certain public use. But what are called *general* benefits should not be considered, because, first, they are to arise, if at all, in the indefinite future, while the compensation must be such as is just, at the time of taking, and, secondly, they are so uncertain in character as to be incapable of present estimation.

3. By "the benefits that will result from such road," under the County Road act of April 7th, 1888, are meant, not the benefits to result from the road when improved as the statute directs, but those resulting from the road merely as it is laid out.

4. The legislature may constitutionally provide that the public, in taking land for highways, may take the buildings on the land absolutely, or may take no interest whatever in the buildings.

On *certiorari.*

Argued at June Term, 1892, before Justices DIXON and WERTS.

For the prosecutors, *DeWitt Van Buskirk* and *Collins & Corbin.*

For the defendants, *John A. McGrath, William D. Edwards* and *Abram Q. Garretson.*

The opinion of the court was delivered by

DIXON, J. The subject for consideration is the report of commissioners appointed to make awards for lands taken in the opening of section 2 of a public road laid out in the county of Hudson, under "An act to authorize the boards of chosen freeholders in the several counties of this state to lay out, open, construct, improve and maintain a public road therein," approved April 7th, 1888. *Pamph. L., p.* 397. The report was filed June 1st, 1892, and, in the case of each of the prose-

cutors, states that only a part of his land was required, and
ascertains the value of that part, the amount of damages which
the owner will sustain by reason of such taking, and the
amount of benefits that will result from the road to him as
owner of his remaining lands. Then deducting the amount
of the benefits from the sum of the value and damages, the
report awards the difference to each owner as his compensa-
tion under the law.

This feature of the report presents the first object of attack
by the prosecutors. They insist that their constitutional right
to just compensation has been withheld by the deduction for
benefits. On the other hand, the defendants claim that the
prosecutors have no constitutional right at all, because, while
the constitution provides that "private property shall not be
taken for public use without just compensation," it adds,.
"but land may be taken for public highways as heretofore,
until the legislature shall direct compensation to be made."

This position of the defendants will first be examined.

In the exceptive clause of this constitutional provision, no
words are more worthy of consideration than these, " as here-
tofore." In withholding from the owners of land taken for
highways that compensation which natural justice requires
should ordinarily be made for private property needed for
public use, the framers of our organic law had regard to pre-
ceding practices in this state which had been adhered to
through several generations. One of these was that of the
original Proprietors of New Jersey, of including in every
grant of land a specific allowance for the opening of highways,.
which in East Jersey was five per cent. *In Matter of High-
way*, 2 *Zab.* 293. The other was a practice enjoined by the
legislature from early colonial times, and persisted in uni-
formly until after the adoption of our constitution in 1844,
that of limiting the width of highways to four rods. See the
acts of 1716 (1 *Nevill, ch. XXIII.*, § 3), of 1774 (*Allinson,
ch. DLXXXIX.*, § 3), of 1799 (*Paterson, p.* 387, § 1), of
1818 (*Elm. Dig., p.* 472, § 1), and Revision of 1846. *Nix.
Dig., p.* 701, § 1. These practices naturally accompanied

each other, and together justified, in large measure at least, the exception which was made. It is this legislative limitation, I think, which is chiefly pointed at by the words " as heretofore," and if it be transgressed, the general right to compensation must be enforced. Said Chief Justice Green, in 2 *Zab.* 304 : " While there would be manifest impropriety in disturbing, without legislative authority, the practice of taking land for highways ' as heretofore,' sanctioned as it is by the constitution, there would be a still more obvious impropriety in giving greater latitude to the practice. *    *    * It is the duty of the court to maintain the law as it stood at the adoption of the constitution, but not to extend its operation."

The statute on which the present proceedings are based authorizes a road one hundred feet wide, and this is admitted to be the width of the highway now projected. The prosecutors, therefore, have a constitutional title to just compensation.

What is meant by the constitutional term " just compensation " is a matter which has received much judicial consideration, and when it was to be awarded for part of a tract of land taken for a public highway, great diversity of opinion has been entertained concerning it. Whether the compensation was to equal only the value of the land taken, or was to include the damage done to the residue, and whether the general, or special, or particular benefit, accruing to the residue from the public use of the part taken, was to be considered in diminution of the value or damages, or both, are the questions about which the variant discussions have centered. It would be useless to refer to the numerous cases, which are cited in the text books, and it must suffice to state our conclusions on the point now involved.

The sixth section of the statute directs the commissioners, " to make a just and equitable estimate and appraisement of the compensation and damages each owner of the real estate and land to be taken will sustain by reason of such taking, considering in such appraisal the condition in which each owner's parcel will be left after taking so much thereof as will

be necessary for said opening, and the benefits that will result from such road to the owner or owners of such land and real estate."

The claim of the prosecutors is, that the constitution does not permit and this statute does not authorize the deduction of benefits.

Just compensation for taking part of an entire tract of land for public use cannot, we think, be ascertained without considering all the proximate effects of the taking. These are the withdrawal of the part taken from the dominion of the former owner, the damage done to the residue by the separation, and the benefit immediately accruing to the residue from the devotion of the part taken to a certain public use. Just compensation is ascertained by combining the pecuniary value of all these facts; if any be excluded, what is given is more or less than is just. The value of the land taken is no more essential to just compensation than is satisfaction for the damage done to the residue, nor is it more exempt from diminution on account of benefits conferred.

There is, however, a possibility of benefit to accrue from certain public uses for which land is taken, like the opening of highways, which should not be considered, for two reasons: *first*, because this benefit is to arise, if at all, in the indefinite future, while the compensation must be such as is just at the time of the taking; *second*, because it is so uncertain in character as to be incapable of present estimation. Such benefit is that which may spring from the growth of population, if it should be attracted by the public improvement for which the land is taken, and from similar sources. It is usually styled general benefit, because it affects the whole community or neighborhood. But any benefit, which accompanies the act of taking the land for the contemplated use, and which admits of reasonable computation, may enter into the award.

The provisions of the statute above quoted are all plainly consistent with this view of the constitution, unless the somewhat indefinite expression, " the benefits that will result from such road," should receive a construction on which the counsel

for the freeholders insist. They argue that it means the bene-
fits which will result from the road when improved as the
statute directs. This construction seems to be inadmissible.
It would violate the constitutional implication that the recom-
pense is to be made with regard only to the proximate effects
of the taking, since this improved condition is remote. Besides,
if this improved condition of the road forms part of the com-
pensation, then, as soon as the land is taken, the public comes
under contract with the former owners of the land to complete
the promised improvement (*In re Water Commissioners of
Jersey City,* 2 *Vroom* 72), and thus these provisions of the act
would be placed beyond repeal. It is not to be supposed that
the legislature intended such a result. The meaning of the
clause is, that the benefits accruing from the road, regarded
merely as a public highway always subject to legislative con-
trol, shall be considered. These benefits are the same as are
usually charged by assessment against lands enhanced in value
by municipal improvements.

But, say the prosecutors, the right to assess land for bene-
fits arising out of municipal improvements is a branch of the
taxing power which is not delegated to the commissioners
under this statute, since they are not authorized to levy such
an assessment, but are mere agents in the exercise of the power
of eminent domain ; and if all of these benefits be charged
against the value of land taken and damages, under the latter
power, the owner of such land will pay a greater proportion
of the cost of the improvement than would be exacted of him
under the taxing power, while upon the owners of other lands,
sharing equally in the advantages, no special burden will be
imposed. An award made under such conditions, they urge,
cannot be just.

That a right to charge landowners for special benefits con-
ferred by a municipal improvement pertains to the taxing
power does not prove that a similar right may not belong to
the power of eminent domain. Sometimes the same result
may be attained by force of different branches of the sovereign
prerogative. Thus private property may be taken for public

use under the police power, or under the war power, as well as under the power of eminent domain. And circumstances may readily be supposed in which the legal claim of the owner for compensation will depend upon the election of the government as to which power it will exert for the accomplishment of its ends. Under the taxing power itself, burdens of very different weight may be laid upon different persons for similar benefits, at the option of the legislature. The expense of opening one street may be met by general tax, the expense of opening another by special assessment. Hence there is nothing abnormal in the fact that in opening a public road a heavier burden may be laid upon a landowner who comes within the reach of eminent domain than may be upon one whom the power of taxation only can affect. Nor does this inequality of burden render the award for property taken unjust. The parties to this transaction are the public and the landowner. Between them the compensation allowed is just. The generosity of the public toward other owners, sharing in the benefit without the burden, does not affect him whose land is taken, except as it affects all other members of the community. No doubt, if the law had directed that the power of eminent domain should be employed conditionally, on payment for the land taken and damages, without deduction for benefits, and that special benefits should be assessed under the taxing power, more even-handed justice might have been done, but as it directs that the eminent domain be exerted in full constitutional force, on making compensation deemed just in view of benefit as well as detriment, it is for the courts merely to see that the legislative mandate be obeyed.

The foregoing discussion disposes of all the objections presented by the prosecutors against the deduction of benefits save one. This is, that the commissioners have deducted general benefits. Such does not appear to be the fact. The case states that the benefits deducted are such as will arise from frontage on the new road and the consequent increase in value of abutting property. This is not the general benefit. Possibly it may cover the advantage expected to accrue from the road

when improved, and if it does it is not in harmony with our views of the law; but it may mean only the benefit immediately arising from the mere existence of the road, which can legitimately be deducted; and the presumption is against the prosecutors.

The report of the commissioners is further assailed because of the mode in which it deals with buildings standing wholly or partly within the lines of the road. This feature of the report is designed to accord with section 2 of an amendment to the act of 1888, which enacts "that where the said road or any other or connecting road, as above provided, or any line thereof, shall take in whole or shall bisect any building, the said commissioners may determine, as to them shall seem most just, to take the whole of said building or so much thereof as stands upon the land required for the road, or to require the owner or owners thereof to move it back from and outside of the line of said road, in case the owner or owners have land enough left for that purpose, and the appraisement of said commissioners, having due regard to all attendant expense, shall be made accordingly." *Pamph. L.* 1891, *p.* 79.

It appears by the report that in the case of O'Flaherty's property the commissioners concluded that the county should take the buildings which stand wholly on the land taken and so much of a building, standing partly on that land, as is within the lines, and, in the case of Schoppert's property, they have adjudged that the owners should move back a bisected building, having land enough left for that purpose. In both cases the decisions comply with the statute.

"In the absence of any constitutional restraint," says Mr. Lewis (*Em. Dom.*, § 277), "it rests with the legislature to say what interest or estate in lands shall be taken for public use. The whole matter thus being in the discretion of the legislature, it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken, according to its views of the requirements of the grantee and the demands of the public good."

I see no reason to doubt that this legislative discretion may be exercised, not merely with regard to the land itself, but also with regard to the other components of the real estate, such as buildings, and that these may be taken absolutely when their destruction or removal is necessary, although only an easement in the land be acquired. Such a condemnation seems clearly to be warranted by the statute. According to the sixth section of the original act, the board of chosen freeholders acquires the right to have, hold, use, occupy, possess and enjoy the said lands and real estate only for the purposes of said road, but, under section 10 of the act and section 2 of the supplement, they may take the buildings absolutely, and remove and dispose of them for their own advantage. To this effect is the O'Flaherty condemnation.

The action taken with respect to the Schoppert building, in which the public acquires no right, rests upon a different footing. In *Taylor* v. *New York and Long Branch R. R. Co.*, 9 *Vroom* 28, this court held that it was proper for the legislature to empower the corporation to condemn the land, without taking any right in trees growing thereon which were not useful in the construction of the railroad. On the same principle the freeholders, under this statute, were not bound to take buildings which could not be used for the purposes of the highway. The Schoppert building was therefore lawfully left as the property of the private owners, and as it stood within the lines of the highway, it became their duty to remove it within a reasonable time. Whether such duty is one that can be enforced by indictment of the owners for nonfeasance, or whether they could only be subjected to the loss that would follow on the opening and clearing of the road by the public, is not now the question. The owners certainly have the right of removal, and the award compensates them for the expense.

In our judgment, none of the prosecutor's objections are sustained, and the proceedings should be affirmed, with costs.