Essex County Circuit Court.

IN RE APPEAL OF VARIOUS PROPERTY OWNERS TO BENEFIT ASSESSMENTS FOR WIDENING MULBERRY STREET, NEWARK.

Decided April 19, 1933.

*J. Henry Harrison* (of *Harrison & Roche*), *Abram A. Golden, Ralph Lum* (of *Lum, Tamblyn & Colyer*), *Fred E. Greenberg, Joseph S. Zemel, Lloyd G. Beatty* (of *Egner & Beatty*), *George J. H. Werner, Mason Kessler* (of *Kessler & Kessler*), *Andrew F. Zazzali, Richard J. Congleton* (of *McCarter & English*), *Thomas E. Fitzsimmons, Sol S. Marder.*

MOUNTAIN, C. C. J. The matter under consideration is the appeal by nineteen property owners of land along Mulberry street in the city of Newark from an assessment for benefits made by the commissioners of assessments for widening the said street. They found no incidental damages.

Some of these property owners have been compensated in another proceeding for land taken and damage to remaining land.

We are informed that seventy-five per cent. of the benefit has been placed on the city at large and twenty-five per cent. on the property holders. With the exception of Boudinot street, assessments extended, in the opinion of the board, to all properties on side streets within one hundred feet of Mulberry street. The vanishing point of the benefit was supposed to be reached at that distance.

Mulberry street was formerly sixty-six feet wide and is now one hundred and one feet wide.

In considering the benefit the board made three zones. It placed what it called a general assessment of $200 a foot south of Raymond Boulevard; at $150 a foot from Raymond Boulevard to Park street; and $100 a foot north of Park street. This is for a widened street.

Some of the factors considered as attributing a special benefit to the land were new frontage, plottage, corner influence, visibility, accessibility, increased traffic, decreased congestion, light and air. Recognizing economic conditions the commission adopted a depression factor of sixty-seven and two-tenths per cent. which it applied to benefits and not to land value. This factor, as used, admits a depreciation of thirty-three and one-third per cent. in real estate since 1929.

The owner of a tract of land fronting on a highway, who has had his frontage taken by condemnation proceedings has been compensated for the land taken and for the damage resulting to the remaining land. The payment for the land taken is a pecuniary equivalent for it. Compensation for damage to remaining land is a pecuniary equivalent for such damage. The owner who has thus been paid has lost no

value. Has any benefit been conferred upon the remaining land which he still owns, and which once having the character of back land, now borders the highway, if so, what is that beneficial advantage and what factors may be considered to determine it?

1. It may be said that a special benefit or new value is conferred upon land which had no frontage, but which now has that advantage by reason of condemnation proceedings which has moved away the front strip, provided it is shown that the highway thus opened adds to the value of this tract by giving it a new beneficial frontage. It arises as one witness said "from rear land being put in front." It is synonymous with accessibility.

2. Plottage: that is, capacity of development attributable to a tract of considerable size. It is value in a parcel of land for some larger use than is generally considered in a business locality. For instance: use for a theatre or hotel.

3. Corner influence.

4. Visibility: that is, how a piece of land can be seen or viewed from the neighborhood. A piece that is plainly visible for some distance may be used to advantage for sign or other advertising.

5. Accessibility.

6. Increased traffic. This may or may not be a benefit, depending upon circumstances. If it is too great, it may amount to a practical suspension of all travel across the street except at the corners. If it is a loitering, business traffic, it may be helpful.

7. Decreased congestion. This too depends upon circumstances. Congestion may make business for a particular neighborhood. The congestion may exist because business is there.

8. Effects of widening. This depends on the particular street and neighborhood. In some places the very intimacy of the store windows which display their friendly wares for sale across a narrow street, extend an invitation to the pedestrian to cross and recross, to gaze and purchase. Who would widen Maiden lane or Nassau streets in New York

City? Upon reflection it is obvious that a street could be so widened that communication from one side to the other would be impractical and that crossing would be hazardous except where regulated.

The question is, whether it has been satisfactorily shown, that considering these factors and a few minor ones, the commissioners employed an incorrect method, or, in particular instances, reached results inherently unfair, irrational or inequitable.

The report of assessments according to benefits bears date December 1st, 1932, and shows that by ordinance adopted May 14th, 1929, the board of commissioners of the city of Newark determined that Mulberry street should be opened and widened from a point about twenty-seven feet south of the southerly line of Market street northerly to Aronson Square (formerly Center street), and that said board later ascertained and declared the whole amount of the costs and expenses paid and incurred by the city of Newark in the Mulberry street matter to be the sum of $2,489,457.33. The report states the amount assessed to be the sum of $583,868, leaving the balance of the whole amount of the costs and expenses, exceeding the amount of the benefits, being the sum of $1,905,589.33 to be paid by the city of Newark. The report declares that the assessments are laid upon all the owners of all the lands and real estate peculiarly benefited, to the amount of the peculiar benefits conferred on said owners of said lands and real estate by said improvement, and that no others than the owners of said lands and real estate so assessed are peculiarly benefited by the said improvement.

There are some general objections to the actions of the commissioners which it is convenient to consider at this point.

One of these objections is that the city of Newark enacted its ordinance providing for an improvement consisting of the widening of Mulberry street from Market street to Aronson Square, referred to as parts one to eleven, inclusive, on December 29th, 1928; that on April 29th, 1931, a second

ordinance was adopted by the commissioners of the city of Newark providing for the widening of Mulberry street from Market street to Mechanic street, referred to as an independent improvement thirty-five feet in width; that on August 19th, 1931, the city adopted an ordinance repealing the ordinance of April 29th, 1931, and abandoned condemnation of the property required under said ordinance; that the entire improvement consisted of twelve parts and that the commissioners of the city of Newark had no authority to abandon less than the entire improvement and that the existing assessment is premature.

On an appeal from such an assessment the Circuit Court is to determine whether the action of the commissioners has resulted in a just and fair assessment or award. *Pamph. L.* 1925, *p.* 242. This limitation makes it improper for the court to inquire into the legality of the assessment. For the purposes of this appeal, it is assumed that the commissioners of assessments observed the statutory requirements, and failure to do so might have been tested by *certiorari.*

There are other general objections which, for the same reason, will not be considered. In this group are allegations that the proceedings are unconstitutional; that one or more of the objectors had no notice of the hearings; that the methods employed by the commissioners were improper and irregular; that the report was prematurely made before the completion of the work, &c.

One of the general objections was to the effect that the area benefited by the opening and widening of Mulberry street was more extensive than the area assessed by the commissioners, or, to put it in another way, that the commissioners failed to assess for the benefits owners of property who actually received them. As has been said, the board of commissioners considered that the vanishing points of the benefits was reached on lateral street at a distance of one hundred feet from Mulberry street. In at least one instance, it was proved that one of the side streets was a one way street with traffic flowing into Mulberry street. It is not inconceivable that the widening of an arterial thorough-

fare may, in some cases, be more beneficial to business on the side streets than to business on the larger highway. The determination of the area of assessment is one of the questions submitted by law to the consideration of the commissioners. Their decision is to stand unless there be very convincing evidence to the contrary. There is nothing irrational or inequitable in the zone of assessments established by the commissioners and this objection will not be sustained.

In the many hearings frequent fault was found by the objectors to the methods employed by the commissioners of assessments in determining the benefits. Benefit is the increment of value to the lands effected by the improvement.

In the case of *Mangles* v. *Chosen Freeholders, 55 N. J. L. 88 (at p. 92)*; 25 *Atl. Rep. 322*, Mr. Justice Dixon said: "There is, however, a possibility of benefit to accrue from certain public uses for which land is taken, like the opening of highways, which should not be considered, for two reasons: First, because this benefit is to arise, if at all, in the indefinite future, while the compensation must be such as is just, at the time of the taking; second, because it is so uncertain in character as to be incapable of present estimation. Such benefit is that which may spring from the growth of population, if it should be attracted by the public improvement for which the land is taken, and from similar sources. It is usually styled general benefit, because it affects the whole community or neighborhood. But any benefit, which accompanies the act of taking the land for the contemplated use and which admits of reasonable computation, may enter into the award."

The construction, alteration or widening of a highway gives rise to no presumption of benefits. They must be proved as any facts.

It was urged by the commissioners that the widened street had relieved congestion, had provided for vehicular traffic to an extent where its capacity was only partially taxed, had increased business, and had resulted in better buildings or building fronts being constructed. There were certain other influences that should not be considered. They existed

whether or not the street had been widened, such as the new Pennsylvania Station, Lefcourt Building, Federal Trust Building, Center Market and Raymond Boulevard.

On the other hand, the objectors insisted that parts, at least, of the widened area have been blighted. That before the widening the street was sufficiently narrow for intimate business on either side, and that now in its widened condition, it affords only an artery for swift vehicular traffic which does not loiter to bargain, sell or buy. The objectors insist that the number of pedestrians using the street has been reduced. However, this may be accounted for by the collapse of the Center Market, and the removal of many of the merchants from that market to the new market on Washington street. In any event, it is apparent that the commissioners considered all of these factors.

While the method of the commisioners is approved, it is apparent that in any calculation they had to make to ascertain a benefit, there had to be some figure which represented a starting point, some base value, and if that value was wrong, or any later figure, the entire calculation would of course be incorrect.

One of the general objections is to the effect that the special benefits would be less if a heavier assessment had been paid by the city on its property and if a contract had not been made with the Public Service Company whereby it vacated certain land and gave it to the city in return for an agreement by the city that it would not be assessed for benefits. As Judge Adams said in his opinion on the Branford Place widening: "The law appears to be that every landowner has an unqualified right to insist that an assessment against his land is too large and to have it reduced, if he proves it to be absolutely too large, but that he has not an unqualified right to insist that an assessment against his land is only relatively too large, and to have it reduced, if he proves it to be relatively too large. To put it in another way, he cannot have his own assessment cut down because his neighbor's assessment is smaller than his own, other things being equal; unless the fact that his neighbor's

assessment is smaller than his own, other things beeing equal, has or may have injured him by imposing on his land more than a proper assessment."

As the Supreme Court said in *Righter* v. *Newark*, 45 *N. J. L.* 104 (at *p.* 109) : "I think it results that there was inequality in the assessments. But is the prosecutor in a position to complain? Had the whole amount of the expenses been placed upon the property, this unequal assessment would place the prosecutor in a position to attack it successfully, because a proper readjustment would result in relieving him from a portion of his burden. Where, however, a surplus representing the amount of the assessment above the benefits is placed upon the city, another question arises, and that is whether the inequality results from the insufficient assessment of the other property or the excessive assessment of the property of the prosecutor.

He cannot complain of the inadequate assessment of his neighbor unless the peculiarity affects him. It could affect him only if by placing a proper assessment upon all the property that should be assessed, it would operate to place upon this property all the assessment made against the city, and also place upon this other property a part of the amount assessed against the prosecutor in order to make the assessment an equal one. Now, while I think inequality appears, and I may say here that I also think it appears that some unassessed properties which were clearly benefited should have been included, yet I do not see how an increase and extension of the assessment could wipe out the $22,635.18 assessment against the city. I do not think that this result from a proper assessment is contended for or could be reasonably apprehended. The prosecutor's right to complain must rest upon his contention that his property was assessed more than it was benefited."

With this case should be read the cases of *Raymond* v. *Rutherford*, 55 *N. J. L.* 441; *affirmed*, 56 *Id.* 340; 29 *Atl. Rep.* 156; *Davis* v. *Newark*, 54 *N. J. L.* 144; 23 *Atl. Rep.* 276; reversed on another point in 54 *N. J. L.* 595; 25 *Atl. Rep.* 336; *Humphreys* v. *Bayonne*, 60 *N. J. L.* 406;

38 *Atl. Rep.* 761, and *Coward* v. *North Plainfield,* 63 *N. J. L.* 61; 42 *Atl. Rep.* 805.

Now, how does this affect the situation before us? The *Pamph. L.* 1917, *p.* 380, provides that "all assessments levied under this act for any local improvement shall, in each case be, as near as may be, in proportion to the peculiar benefit, advantage or increase in value which the respective lots and parcels of land and real estate shall be deemed to receive by reason of any such improvement, and in no case shall any assessment on any parcel of land exceed in amount such peculiar benefit, advantage or increase in value."

The assessment will be greater against the city at large if the commissioners, following the mandate of the law, find, as I assume they will, that the amount of benefit assessments against these objectors is too large.

When the expansion of this street was first envisioned by the city commissioners there was a building on the southeast corner of Market street and Mulberry street owned by Fred Ehrenkranz, with a frontage on Mulberry street of twenty-seven and twenty-two hundredths feet, and on Market street seventy-five and forty-two hundredths feet. Next to that building and to the south was a piece of property owned by the Women's Christian Temperance Union. East of Ehrenkranz's property was a building owned by Samuel Forster, one of the objectors. After the condemnation proceedings had commenced, the city purchased the Ehrenkranz property and tore the building down. No part of the Forster or Women's Christian Temperance Union property was appropriated. It is the insistment of the board of commissioners that the building of the Women's Christian Temperance Union is now on a corner, although the proof is and the fact is, that Market street has been so widened; that north of this building is an open triangle, with the apex at the northwest corner of the Women's Christian Temperance Union building, and the base line resting on the Forster property. The hypotenuse of this triangle is the line of Market street. The city insists that it cannot use this property except for the purposes for which it was purchased.

It is impossible to conclude that the Women's Christian Temperance Union building is upon a street corner in the ordinary conception of those words and, of course, the same applies to the Forster property, although it is apparent that both of these properties enjoy corner influences. The width of Mulberry street in front of the Women's Christian Temperance Union building is, I think, sixty-six feet, and the width of Mulberry street north of Market street is one hundred and one feet where it has been widened. It is claimed by the commissioners that the benefit accruing by these facts which I have recited, amounts to $43,782. This figure, in my opinion, is not only inequitable, but irrational. Commissioner Judge testified on the witness stand that he believed that the value of the Women's Christian Temperance Union property on Market street before the widening was $2,500 a front foot considering that property an inside piece, and that he believed that its value at the time of the assessment for benefits was $3,500 a front foot because it now had Market street frontage. He added twenty-five per cent. for corner influence. In other words, with the Ehrenkranz property gone and an unpleasant dark triangle of land on its north, the benefit to the Women's Christian Temperance Union building, entirely derived from corner influence, is alleged to be $43,782. This objection will be sustained, and the report, so far as this objection is concerned, will be sent to the commissioners of assessments for revision.

What has been said about the property of the Women's Christian Temperance Union also applies to property of Samuel Forster, 246 Market street. The assessment is too high.

The group of properties known as Nos. 248-250 and 252 Market street, and owned by Samuel Silverstein, David Friedman and the S. & S. Investment Company, are beyond the zone of benefits established by the board of assessments and should not be assessed at all. If the apex of the triangle formerly owned by Ehrenkranz is considered the approximate corner, then the zone of lateral benefit would stop at the property of Samuel Silverstein. This should be corrected.

Before Mulberry street was widened the estate of Mary F. Casebolt owned a piece of property on the easterly side of Mulberry street extending from Clinton to Market street, a distance of two hundred and twenty-six and fifty-one hundredths feet. The lot was irregular in shape and after the taking, the estate found itself with a lot having a frontage on Mulberry street of one hundred and nineteen and sixty-eight hundredths feet and a frontage on Clinton street of twenty-three and ten hundredths feet. The southerly side of that lot measures thirty-eight and fifty hundredths feet. As is seen, it is irregular in shape and it is one of the insistments of the objecting estate that the irregularity of the lot lessons its availability for business and indicates a gravitation to a lower use.

The plottage of this lot of land is not of the best. The commissioners were cognizant of this, and gave it consideration.

The same condition exists with regard to 74 Mulberry Street, Incorporated, a lot of land on the northeast corner of Mulberry street and Raymond Boulevard.

A depression factor of sixty-seven and two-tenths per cent. was adopted by the commissioners because they used 1929 values as a starting point of their calculation. It was explained that this factor was a result of their judgment as to the depreciation in property between 1929 and 1932. I am neither in accord with the amount of depreciation as determined by the commissioners, or their method of its use. I think the depreciation was greater. If the alleged benefit had been ascertained in accordance with the method employed by the commissioners, then they were depressing the benefit and not the land value. I think that was a mistake and that its application should have been made to the value of the remaining land with frontage, otherwise the value of the remaining land with frontage was not a true value.

Generally speaking, the method employed by the commissioners in an imaginery case was about as follows:

(1) Entire value of the property before the taking, $400,000.

(2) Price paid for property taken and damages to remaining land, $200,000.

(3) Value of remaining land without frontage, $200,000.

(4) Value of remaining land with frontage, $250,000.

(5) Therefore, $250,000 less $200 equals the benefit.

Of course, in making this computation, the board of commisioners, where necessary, in their judgment, made allowances for plottage, visibility, corners and street influences, depression factor, &c. In my opinion, this method is excellent, and assuming that proper figures are used, it should give the approximate benefit, if any there is.

While item No. 3 above is really not the value of the remaining land without frontage, still I adopt that description because it makes the calculation easy to understand. The back land always had a frontage on the street and its value was determined entirely by its accessibility. Condemnation proceedings makes such land more accessible. There is something phantom like about a benefit. It is elusive. To determine it, one must lay out a view of the present use of the property and the purposes of the owner in regard to its future enjoyment, and consider only what will be the influence on the proposed improvement in the market value of the property. What is it now fairly worth in the market and what will be its value after the improvement is made? *Furman Street,* 17 *Wend.* 668. In several briefs I notice that counsel have believed that the general use of the calculations made in the above imaginery case was not consistent with the opinion of Judge Adams in the Clinton street widening. I find no inconsistency. Judge Adams did not disapprove of this method. It may be noted that a benefit may consist of two values: market value and the value of use. The former is more comprehensive and takes account of more elements in the calculation. The inquiry as to use is mainly an inquiry as to accessibility. And too, the commssioners should consider not that a lot is on a street one hundred and one feet wide, but that the lot is on a street thirty-five feet wider than that street upon which it formerly bordered.

When a part of Clinton avenue was widened and a strip of land was taken for such purposes, Judge Adams, who heard the appeal, had much the same situation before him that the court now has. He said: "I understand that the owners who will be affected by the award of the commissioners are four in number: the estate of William Riker, deceased; R. J. Stillwell, Mary A. Bergfels and James A. English. The tracts belonging to these owners front on one side of Clinton avenue, which it is proposed to widen by taking a strip varying in depth from six to twelve feet or more. The depth of the several tracts, that will remain after this strip has been taken, will range from one hundred fifty to six hundred and seventy-five feet, or thereabouts.

The question is, in each case, of what advantage will the widening of the avenue deprive the owner.

Obviously, it will deprive the owner of some depth. To what extent this deprivation will be injurious will depend on whether the remainder will be rendered less available, and so less valuable than it was before. This involves a consideration of the contour of the land, the position of buildings, its capability of division into city lots, and other things that will occur to the commissioners.

Obviously again, the widening will not deprive the tract of frontage. It will merely set the frontage back. The tract will still, as before, front on the avenue. Whether the new frontage, considered merely as such, and without regard to depth, will be better or worse than the old frontage, or just as good, will depend upon circumstances. If it will be just as good, the change of frontage, merely as such, will not be an item of damage. If it will be worse, the change of frontage, merely as such, will be an item of damage. If it will be better, that will be a benefit, which the commissioners, in awarding damages, have, under the statute, no power to regard."

There is another objection which should be examined. It is that of the Catholic Diocese of Newark. So far as that objector may profit by a revision of the report along the lines which I have indicated, it may do so, but to claim

it is entitled to incidental damages and in the amount of $31,000 because it acquired two additional pieces of property in order to erect its present building, should be ignored by the assessment commissioners.

The court also wishes to point to the assessment for benefits levied on blocks 17, 21 and 23 of section 149, which has been called the Baum and Katzin property. If it is found that any benefit assessments should be levied against this property, the owners of block 23 should have a separate assessment from that of blocks 17 and 21.

The use of the base value of 1929 as a starting point seems entirely rational. Those values were fixed as of that year and damages were paid on that basis, or a little more. In short, the objectors and the city at that time seemed to have regarded them as more or less accurate. The court accepts those values. But, in the subsequent calculations, if any of the other figures are incorrect, it follows that the result will also be inaccurate. The following errors have crept into the calculations:

(1) The depreciation since 1929 is greater than has been allowed.

(2) The benefit allowed in each zone is too large.

(3) The method of using the depression factor should be changed.

This will alter the assessment upon each piece of property returned in the report.

In connection with the assessment levied against the Art Metal Works, while that company should have the benefit of the suggested changes, I see no objection to the board of assessments considering the plottage of that objector as more than one hundred feet from Mulberry street.

With these instructions, the entire report is returned to the board of assessments for further consideration and revision.