UNITED STATES of America,
Plaintiff-Appellee,

v.

Maxim BOBINSKI et al., Defendants-
Appellants.

In re condemnation of 4,475.23 acres of
land, more or less, in the Town of Riv-
erhead and Brookhaven, County of Suf-
folk, State of New York.

No. 324, Docket 24290.

United States Court of Appeals
Second Circuit.

Argued April 4, 1957.

Decided May 9, 1957.

Edgar G. Brisach, New York City (John H. Finn, New York City, Gordon M. Lipetz, Solomon Raffe, Riverhead, N. Y., and Remsen Brinckerhoff, New York City, on the brief), for defendants-appellants.

Harry T. Dolan, Sp. Asst. to Atty. Gen. (Perry W. Morton, Asst. Atty. Gen., and Roger P. Marquis and A. Donald Mileur, Attys., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.

CLARK, Chief Judge.

This appeal is from the modification and reduction of values stated in the report of commissioners appointed under F.R. 71A(h) of parcels of property of defendants-appellants taken in condemnation by the United States of America. The property in question is largely farm land in Eastern Long Island taken in proceedings commenced in February 1952. In December 1953 the court appointed three commissioners—two lawyers and a real estate man—under F.R. 71A(h); and they filed their initial report as to the fair value of some twelve parcels of land in February 1955, the real estate member dissenting on the ground that the values were set too high for six parcels. In April 1955 the court remanded this report to the commissioners for more specific findings and conclusions of law; and they filed a Revised, Amended and Supplemental Report in December 1955. On March 27, 1956, the district court rendered its decision, setting aside the findings of the majority of the commission as to the value of the six parcels and also setting aside a finding that certain buildings were taken. The court substituted its own findings as to the value of the land in the six parcels and made its own finding that no buildings were taken on the lot in question. From this judgment the present appeal is taken.

Both the claimants and the Government presented the testimony of expert witnesses on the value of all or some of the parcels involved on this appeal, with the usual spread from the low of the Government witnesses to the high of defendants' witnesses. The findings of the commissioners, in both majority and dissenting opinions, and the findings of the court were, however, all within the range of testimony of some of the witnesses, though none of the fact-finders set values identical with those of any particular witness. The commissioners personally examined the land, and Judge Inch indicated that he was "not unaware of the general nature of this property under consideration." The valuations of the various witnesses and finders are appended in the margin.[1]

**I.**

| Parcel | CLAIMANTS | | GOVERNMENT | | COMMISSION | | COURT |
|---|---|---|---|---|---|---|---|
| | Matthews | Silkworth | Smith | Niland | Majority | Dissent | |
| 9 | $ 70,000 | $ 60,450 | $ 39,350 | $ 39,800 | $ 60,000 | $ 48,400 | $ 47,760 |
| 30 | 50,000 | 43,948 | 25,164 | 25,550 | 38,850 | 38,850 | 30,660 |
| 43 | 282,540 | ** | 148,500 | 144,470 | 213,450 | 183,000 | 178,200 |
| 46 | 66,900 | ** | 37,100 | 39,400 | 59,500 | 49,500 | 47,520 |
| 51 | 38,570 | ** | 14,600 | 14,600 | 24,750 | 19,150 | 17,520 |
| 59 | 60,000*** | ** | 17,900 | 15,350 | 27,200 | 21,500 | 21,480 |
| 59 (Severance) | | ** | 1,890 | 1,410 | 4,950 | 1,900 | 2,268 |
| Total | $568,010 | — | $284,504 | $280,580 | $428,700 | $362,300 | $345,408 |

** No testimony offered.

*** Value before taking, less value after—includes severance damages to land. Government witnesses and Commission considered only severance damages to buildings.

■ Although the issue has not been raised on this appeal, we are concerned as to the appointment of commissioners here. Both the language and the history of F.R. 71A(h) amply demonstrate that trial to the court is to be the usual method of settling values in Government condemnation, subject to a right in either party to make timely claim for a jury, and that reference to commissioners is to be an exception for special situations. Notes of Advisory Committee on Rules, 28 U.S.C. (1952 Ed.) pages 4355–4361; Moore's Federal Rules 351–358 (1956); 7 Moore's Federal Practice 2790–2799 (2d Ed. 1955). Thus the usual trial must be had "unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it." As is carefully detailed in the Advisory Committee's Supplementary Report, March 1951, the purpose here was to provide some means of insuring uniformity of treatment of property owners in large and far-reaching developments, of which the TVA was a notable example. Although the court here made the findings required by the rule in its order of appointment, it is hard to see the basis here, for the project was neither so large nor so distant as to make decision by the court at all difficult. The court points out that no defendant had claimed trial by jury; and since the United States had not done so, then there was applicable the provision of F.R. 71A(h) that "[t]rial of all issues shall otherwise be by the court." Unwarranted use of commissioners, like similar use of masters, is an "effective way of putting a case to sleep for an indefinite period." La Buy v. Howes Leather Co., 352 U.S. 249, 253, note 5, 77 S.Ct. 309, 312, 1 L.Ed.2d 290, quoting Chief Justice Vanderbilt. Certainly the misadventures of this case and of United States v. 44.00 Acres of Land, 2 Cir., 234 F.2d 410, certiorari denied Odenbach v. United States, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123, do not speak well for a course substantially repudiated in the state as well as federal procedure.

■ But the order here under the circumstances can be at most only erroneous, not beyond jurisdiction; and since no party is attacking it directly, we must accept the salvage operation conducted by the judge when his appointments presented more problems than they solved. By referring the matter back to the commissioners he obtained findings sufficiently detailed to afford him an opportunity for intelligent review; and that review convinced him that the findings of the majority as to land value were clearly erroneous. A finding is clearly erroneous, although there may be some evidence to support it, if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Gindorff v. Prince, 2 Cir., 189 F.2d 897; Iravani Mottaghi v. Barkey Importing Co., 2 Cir., 244 F.2d 238. A running controversy divided the commissioners on both their reports, and divided the parties in the court below as well as here: whether certain other parcels of land located in Eastern Long Island were comparable to the condemned lands so that the sales price of those parcels should be considered in determining the fair value of the condemned tracts. At the heart of the Government's case was the thesis that the condemned farm land should be compared with parcels of similar soil composition, rather than with parcels of higher natural productivity. The minority commissioner—the real estate man, significantly—accepted this contention; but the majority attempted to minimize the importance of soil quality by observing that with fertilizer and irrigation the inferior soils condemned could be improved to the same quality as other soils. The district judge agreed with the minority commissioner, and on that basis held certain majority findings clearly erroneous. It seemed obvious to

us that land which requires fertilizing and irrigation each year to maintain its productivity is not so valuable as land which has the same productivity without such costly expenses, and we agree with the court below that the commissioners' findings should be set aside. Of course it was not necessary for the district judge to send the case to a commission once again, and he was completely justified in concluding the protracted litigation with findings of his own. United States v. 44.00 Acres of Land, supra, 2 Cir., 234 F.2d 410, certiorari denied Odenbach v. United States, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123.

■ We have somewhat more difficulty with the district court's substituted conclusions as to land value, since they are not accompanied by findings as detailed as those of the commissioners and are less susceptible to careful review on appeal. Appellants submit a table to show that the trial court's figures are with one minor exception precisely 20 per cent higher than the highest valuation set by a Government witness. Whether or not this was the trial court's method of finding valuation and on what grounds it may be justified do not appear from the opinion below; and accordingly we must vacate the trial court judgment and remand for more detailed findings. We are not holding that its figures are wrong, only that as yet they are not supported by adequate findings.

The final point on appeal concerns some twenty buildings which were located on one parcel (No. 43 owned by appellant Alliene S. D. Johnson) before the suit began and which were removed by their owner between October 1 and November 15, 1952. The Order of Possession dated February 26, 1952, tersely granted the United States "the right to the immediate use, occupancy and possession, for the purpose of clearing, grading and construction, of [this parcel] of land"; but it referred to an annexed affidavit of a Special Assistant to the Attorney General which declared "that petitioner-plaintiff does not contemplate disturbing said defendants in the use and possession of any dwellings or other structures now being used by the owners; that petitioner-plaintiff will carry on the work of grading, clearing and constructing in such manner as not to disturb present occupants of any structures located within this area."

The Declaration of Taking which covered this tract was filed October 31, 1952, and described the estate taken as follows: "the fee simple title subject to existing public utility easements and the right of the public to use [two roads] and the following rights in [this parcel] (a) possession of the buildings with grounds around and within a reasonable distance thereof, including gardens and pasture lands, rent free, until January 1, 1953; (b) right to harvest, before January 1, 1953, all crops growing thereon and (c) right to remove, on or before January 1, 1953, any and all improvements of any nature and kind whatsoever and to make such disposition of the same as absolute owner without obligation to raise, level off, fill in, cover up, or grade over, the ruins, excavations, cellars, or openings caused by the removal of said buildings and structures; * * *."

The commissioners found that all the buildings were located on the land "on the date and at the time of the taking herein"; and they found that they were removed between October 1 and November 15, 1952. The commissioners must have assumed that "taking" occurred at the time of the Order of Possession, on February 26, 1952. The commissioners fixed the value of the buildings on the land before removal at $33,500 and their value removed from the land for relocation elsewhere or other use at $5,350; and they included the difference between the figures as just compensation for the buildings taken.

■ The court disallowed this amount, finding that "the buildings * *

had been removed by the owners with the consent of the Government before the taking." It would appear that the court thought the "taking" occurred when the Government eventually took physical possession of the land. We need not determine the precise date of "taking," since in any event it is clear that the Government gave the landowner a simple choice of moving her buildings or losing them. In such circumstances the condemnee is entitled to compensation for the loss of value sustained, whether the buildings were actually occupied or destroyed or whether they were merely depreciated in the process of being moved. State (Mangles) v. Hudson County Board of Chosen Freeholders, 55 N.J.L. 88, 25 A. 322, 17 L.R.A. 785; Mills on Eminent Domain § 223 (2d Ed. 1888); Lewis on Eminent Domain § 726 (3d Ed. 1909); Nichols on Eminent Domain § 5.81[1] (3d Ed. 1950). Doctrines applicable to removal of fixtures which have become part of the real estate apply *a fortiori* to the removal of structures, e. g., United States v. Becktold Co., 8 Cir., 129 F.2d 473; Annotation, Compensation in eminent domain in respect of fixtures or chattels used in connection with real property taken or damaged, 90 A.L.R. 159, 165.

We think the proper approach is to measure the value of the land without the building and to add to that sum the cost of removing the structure to its new location, plus the depreciation of the building attributable to relocation, e. g., State (Mangles) v. Hudson County Board of Chosen Freeholders, supra, 55 N.J.L. 88, 25 A. 322, 17 L.R.A. 785. But lest the owner receive more than fair compensation, it may be appropriate to use the following formula if it would fix fair value lower than the above rule: the owner receives a sum equal to the fair value of the land with the building, reduced by the fair value of the building to one who must remove it and locate it elsewhere. In determining the value of the building to such a purchaser it is necessary to consider the cost of removal and the value of the building once re-

located, e. g., United States v. Becktold Co., supra, 8 Cir., 129 F.2d 473.

The order of the district court is vacated and the action is remanded for further findings and judgment.