**UNITED STATES of America,
Petitioner-Plaintiff,**

**v.**

**4,475.23 ACRES OF LAND, MORE OR LESS, IN TOWNS OF RIVERHEAD and BROOKHAVEN, COUNTY OF SUFFOLK, State of NEW YORK, and Carl Vater, et al., Defendants.**

Civ. No. 84.

United States District Court
E. D. New York.

June 4, 1957.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Gordon M. Lipetz, Riverhead, for Maxim Bobinski and Albin Bobinski, defendants.

Solomon Raffe, Riverhead, for Charles Zeh and Elizabeth Zeh, defendants.

Kelly, Finn & Brisach, New York City, John H. Finn, New York City, of counsel, for Alliene S. D. Johnson, Harry E. Edwards and Charlotte S. Edwards, Joseph Rychlinski and Mary Rychlinski, defendants.

INCH, Chief Judge.

Upon remand of this matter for further findings and reconsideration of the question of just compensation for the buildings and structures on Parcel 43, I have again reviewed the pertinent facts established by the evidence and make the following additional findings of fact and conclusions of law.

At the outset, to explain the circumstances concerning the appointment of Commissioners of Appraisal, which action the Court of Appeals seems to criticize, I wish to state that this decision was reached with great hesitation, for long experience has demonstrated that this procedure, as the Court of Appeals states, United States v. Bobinski, 2 Cir., 244 F.2d 299, usually creates more problems than it solves, and in this case resulted in such long delays, excessive costs and inaction as to cause me to vacate and revoke the order of appointment as to the remaining and undisposed of parcels involved.

■ For many years prior to the effective date of Federal Civil Rule 71A (August 1, 1951), 28 U.S.C.A. and during the period when the Federal Courts were required to conform to the New York State procedure (Sec. 258, Title 40 U.S. C.A.), which used the Commissioner method exclusively, this Court was the first Federal Court in this State, as far as I am advised, which departed from this procedure (United States v. Lambert, 2 Cir., 1944, 146 F.2d 469), and, except in a very few isolated instances, the Court has not found it expedient to follow this method of trial procedure. While neither the Government nor any of the defendants formally requested the appointment of a Commission, I ascertained that this action involved approximately 65 major parcels in separate ownerships and several hundred smaller parcels and lots in subdivided areas, owned by some 200 persons or corporations scattered throughout the United States, Canada and foreign countries. It also appeared that there were a large number of attorneys representing the defendants, who resided in various sections of Long Island, Metropolitan New York, Brooklyn, and in various states. The lands are located some 90 miles from the Courthouse, with transit and travel facilities generally limited to privately-owned automobile. While a view of the property by the Court, jury or commission is not now required, it is considered advisable, where possible, and when the physical characteristics of the land and improvements have not so changed since the taking as to impair the value of personal inspection. The subsequent history of this action, however, dispelled any notion that I entertained to expedite the hearings and to resolve the questions presented by the use of Commissioners and my order appointing them was thereafter vacated and set aside, and I heard and decided the remainder of the claims presented.

The core of the major dispute as to values was the soil classification and characteristics of the land involved. The Government contended that none of the so-called tillable lands or farms under cultivation were located in an area where the better and higher grade soils, such as

Hempstead Loam, Bridgehampton Loam and Sassafras Silt Loam existed, but that the highest grade soil involved in the taking area was Sassafras Loam and graduating down to Duke's Sand. This issue was not challenged, but nevertheless the defendants' witnesses chose to .chiefly rely upon sales in areas such as Mattituck, Watermill and Riverhead (North), where the better type soils predominated, and where sales indicated values ranging as high as $800 per acre. The Government's witnesses relied upon sales in the vicinity of the taking and within the taking area,—some 46 in number—generally comparable as to soil types and physical characteristics to the land under appraisal. All of the sales used by both sides were indicated on a sales map prepared by the Government to show proximity or remoteness to the area involved and all sales were directly related to an official Department of Agriculture Soil Classification Map, so that there was no dispute as to the location of the sales relied upon, as well as types of soil involved. Despite the fact that the productivity of inferior soils could be raised by the intensive use of fertilizer and irrigation, the witnesses for the defendants, as well as two of the Commissioners, chose to disregard the costs incident thereto and the consequent differential in value.

■ There was abundant factual substantiation of the Government's claimed land values of the parcels under consideration and ample to justify my adoption of its estimates. However, I chose to select the higher of the two government appraisals as to the land and increased such appraisals by 20%, as my final conclusion of value. I know of. no magic formula for fixing land values with technical precision or which eliminates the exercise of judgment and discretion, but I considered my procedure fair,—if not liberal—to the landowners, based upon the proof submitted.

I accepted and adopted the values ascribed to buildings and irrigation systems by the Commission, as I assumed they had an opportunity to view these installations. In few cases which I have tried in the past 20 years have I been so inclined to accept and adopt the Government's estimates, for few appraisals have been so fully substantiated by such extensive research and so many comparable sales covering the various types and categories of land involved. The defendants' witnesses, in my opinion, failed to support their opinions by sales of comparable land, but sought to create the impression that inferior soils were worth the same as superior types, solely because one can be brought up to nearly equal productivity by the use of fertilizer and water.

■ As to the value and just compensation required to be paid for the structures removed by the owner from Parcel 43 and relocated by her on other land to the south, I infer, from the Court of Appeals decision, that I am required to make such an award within the framework of the formulae indicated and from the proof at hand, as the taking of further proof is not indicated or directed. I was, and am of the opinion, based upon the existing record, that the Government did not take the position "that the Government gave the landowner a simple choice of moving her buildings or losing them". The record, in my judgment, shows that the Government contended that the owner, not the Government, had the "choice" and "election" of removing these buildings "without compensation" or leaving them and receiving "full compensation". This position the Government attorney stated in the record. From the existing record I gained the impression that this choice was based upon a pre-arrangement long before the Declaration of Taking was filed on October 31, 1952. This impression is strengthened by the fact that as early as May, 1952, she started the work of moving and relocating these structures and concluded the work before the expiration date stated in the Declaration of Taking. (January 1, 1953.) That she had the choice of removal or full payment in lieu thereof seems well established in the record. That she exercised her

choice is not disputed. Nevertheless, the Court of Appeals directs me to award her compensation for the buildings so removed. I find no proof submitted which would fall within the precise formulae of valuation suggested, but the method employed by the owner seems, for all practical purposes, to be the equivalent, since such a method obviously reflects and discounts costs of removal and relocation, as well as depreciation, if any, resulting therefrom.

Based on the existing state of the record and the decision of the Court of Appeals, I fix and determine the sum of $28,150 (the amount claimed by the owner) as just compensation to be paid by the Government for the buildings formerly located on Parcel 43 and removed by the owner, together with interest at 6% per annum from January 1, 1953. With this exception, all values and awards involved on this appeal and as previously determined in my former decision are found and adopted as representing just compensation.

Settle order.