**KRINSLEY v. UNITED ARTISTS CORP. et al.**

Civ. A. No. 50 C 1024.

United States District Court
N. D. Illinois, E. D.

Nov. 24, 1950.

Schultz, Krinsley, Voorheis & Hedberg, Chicago, Ill., for the plaintiff.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, Chicago, Ill., for defendant United Artists Corp.

Thomas C. McConnell, Chicago, Ill., for all other defendants.

CAMPBELL, District Judge.

This is a civil action in interpleader brought under the provisions of Section 1335, Title 28 of the United States Code Annotated. The complaint alleges that the parties deposited with him, as escrowee agent, three certain agreements executed on the one part by United Artists Corporation (hereinafter referred to as defendant), and on the other by the remaining parties (hereinafter referred to as cross-claimants). The three agreements provided, among other things, for the remodeling, management and operation of the Towne Theatre located in Milwaukee, Wisconsin, and for the acquisition of stock in that theatre by defendant. The escrow agreement contained the following pertinent provision: "In the event a final decree is entered in any court of competent jurisdiction against the United Artists Corporation declaring that the agreements hereinabove enumerated numbers 1, 2 and 3 is or are unlawful, the Escrowee shall tear off the signatures on the aforesaid agreements, mark each of said agreements 'Void' and shall mail one set of said agreements to United at 729 Seventh Avenue, New York City, New York, and shall mail the other set of said agreements to Papas at 2529 North Kedzie Boulevard, Chicago. If, however, no such decree is entered within two (2) years from June 11, 1946, then the Escrowee shall mail one set of said agreements to United at the above address and shall mail the other set of agreements to Papas at the above address, and said agreements shall thereupon become effective as of their respective dates, to-wit: June 11, 1946".

On May 3, 1948, the Supreme Court of the United States rendered an opinion in the case of United States v. Paramount Pictures, Inc. et al., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, in which case United Artists was a party defendant. Thereafter, the cross-claimants demanded that the escrowee fulfull the terms of the escrow agreement by tearing off the signatures, on the asserted ground that the aforementioned decision of the Supreme Court rendered the agreements unlawful and void. Defendant, on the other hand, demanded that the escrowee should not tear off the signatures and that the agreements be delivered to defendant.

The cross-claim alleges that United Artists, in combination with other producers, exhibitors and distributors, have been engaged in a conspiracy to monopolize the exhibition of motion pictures and the operation of motion picture theatres in Milwaukee in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2. It further alleges that the subject agreements were entered into only as a result of coercion and duress made possible by such conspiracy; and that acquisition of stock in an exhibitor, as provided for in the three agreements, has been found to be illegal in the case of U. S. v. Paramount Pictures, Inc., supra. The cross-claimants,

therefore, seek a decree enjoining the enforcement of the three agreements and requiring that the shares of stock held by United Artists in the Milwaukee Towne Corporation be cancelled.

United Artists now moves to dismiss the cross-claim on the following grounds: (1) It does not state a claim under the anti-trust laws of the United States; (2) It prays for cancellation of shares of stock allegedly acquired in violation of the anti-trust laws, which is not a remedy provided for in the pertinent statutes; (3) It fails to allege a claim for rescission of the transaction alleged; (4) It alleges facts showing that cross-claimants' remedy at law is adequate; (5) It does not allege a tender of, or make a tender of the consideration received by cross-claimants in the transaction alleged, wherefore said cross-claim is wholly without equity. A hearing was had upon defendant's motion, after which the Court took the matter under advisement upon the briefs of the parties.

■ The cross-claimants contend, and the Court agrees, that the cross-claim does not purport to state a claim under the Sherman Anti-Trust Act. The cross-claim neither relies upon that Act to provide jurisdiction, nor does it pursue a remedy granted to a private litigant under that Act. True, it alleges that defendant has engaged in practices that are violative of the anti-trust laws, but apparently does so solely for the purpose of establishing the invalidity of the subject agreements and transfer of stock. The relief sought is of an equitable nature that has been traditionally available to an innocent party to an invalid contract.

■ Cross-claimants further contend that, although these specific agreements were not declared invalid in U. S. v. Paramount, supra, the Supreme Court did, however, hold agreements of these types to be illegal. A close analysis of that decision indicates that cross-claimants endeavor to apply it too broadly. The Supreme Court was not required to determine the propriety of joint ownership of theatres by distributors, such as United Artists, and independent operators, since, at that time, the distributors did not own or control theatres. The only point in issue, in this regard, was whether the so-called exhibitor-defendants should be permitted to retain their ownership and control of moving picture theatres.

"* * * The defendants fall into three groups: (1) Paramount Pictures, Inc., Loew's Incorporated, Radio-Keith-Orpheum Corporation, Warner Bros. Pictures, Inc., Twentieth Century-Fox Film Corporation, which produce motion pictures, and their respective subsidiaries or affiliates which distribute and exhibit films. These are known as the five major defendants or exhibitor-defendants. (2) Columbia Pictures Corporation and Universal Corporation, which produce motion pictures, and their subsidiaries which distribute films. (3) United Artists Corporation, which is engaged only in the distribution of motion pictures. The five majors, through their subsidiaries or affiliates, own or control theatres; the other defendants do not". U. S. v. Paramount Pictures, Inc., 334 U.S. 131, 140, 68 S.Ct. 915, 921, 92 L.Ed. 1260. Futhermore, it was not conclusively determined in that case that, in all instances, joint ownership by the five majors was ipso facto a violation of the Sherman Act: "It seems, however, that some of the cases of joint ownership do not fall into any of the categories we have listed. Some apparently involve no more than innocent investments by those who are not actual or potential operators. If in such cases the acquisition was not improperly used in furtherance of the conspiracy, its retention by defendants would be justified absent a finding that no monopoly resulted. And in those instances permission might be given the defendants to acquire the interests of the independents on a showing by them and a finding by the court that neither monopoly nor unreasonable restraint of trade in the exhibition of films would result. In short, we see no reason to place a ban on this type of ownership, at least so long as theatre ownership by the five majors is not prohibited. The results of inquiry along the lines we have indicated must await further findings of the District Court on remand of the cause."

U. S. v. Paramount Pictures, Inc., supra, 334 U.S. at page 153, 68 S.Ct. at page 927, 92 L.Ed. 1260. There is no language in the Paramount decision, however, indicating that participation in joint ownership of theatres by a distributor cannot, under any circumstances, be deemed violative of the Sherman Act. In other words, a District Court is not precluded from conducting an independent investigation as to the validity or invalidity of any such business arrangement, alleged to be in furtherance of a monopolistic conspiracy.

Cross-claimants also now contend in their briefs that Agreement No. 3, which relates to the licensing of films by defendant to the Miller Theatre Corporation, is illegal in view of the Paramount decision as constituting (1) A franchise, and (2) Block-booking. Paragraph 1 of Agreement No. 3 provides: "1. United Artists shall offer to the Theatre Corporation for exclusive first-run exhibition in its said theatre all of the A feature motion pictures which it produces, and which it controls without producer approval, and shall use its best efforts to offer for exclusive first-run exhibition in its said theatre all of the A feature motion pictures which it controls where producer approval is required, and the Theatre Corporation shall, subject to the provisions hereinafter set forth, exhibit such motion pictures as its first-run feature pictures; provided, however, that the Theatre Corporation shall not be required to exhibit such motion pictures for more than forty-two (42) weeks' playing time in said theatre in any 12-month period * * *." Paragraph 2 of the Agreement provides for termination of the agreement by the Theatre Corporation in the event that United Artists should be unable to furnish the required motion pictures. In the absence of evidence, this Court is not prepared, at this time, to conclude that Agreement No. 3 is invalid as providing for a franchise or block-booking. It appears to contain aspects of each, but yet, when viewed in the light of other evidence, may well be a perfectly reasonable and valid contract. A franchise is a contract with an exhibitor which extends over a period of more than a motion picture season and covers the exhibition of features released by the distributor during the period of the agreement. Block-booking is the practice of licensing, or offering for license, one feature or group of features on condition that the exhibitor will also license another feature or group of features released by the distributors during a given period. The Supreme Court held that franchises were not illegal per se, and, in regard to block-booking, stated: "We do not suggest that films may not be sold in blocks or groups, when there is no requirement, express or implied, for the purchase of more than one film. All we hold to be illegal is a refusal to license one or more copyrights unless another copyright is accepted". As stated previously, it would be premature for this Court to make a conclusive determination of the legal effect of the Agreement at this point of the proceedings.

Defendant apparently is of the opinion that, since the Supreme Court failed to declare these specific agreements, or even agreements of this type, to be illegal within the time limit set forth in the escrow agreement, i. e., June 11, 1948, the provisions of the escrow should be fulfilled, therefore, by delivery of the subject agreements to the parties. This contention can be disposed of summarily, for time cannot be of the essence in a contract which might prove to be illegal. The mere introduction of a time limitation in a contract is insufficient to induce a court to exercise its legal or equitable powers to validate that which is invalid.

Furthermore, there is an additional reason for denying defendant's motion. The cross-claim alleges that the contracts were executed as the result of economic coercion and duress. . It follows, therefore, that regardless of whether or not the cross-claimants are successful in proving that the agreements provide for prohibited joint ownership, franchise or block-booking, they should still be permitted an opportunity to prove this distinct claim.

In view of the crowded condition of the Court's trial calendar, this appears to be a case ideally suited to hearing by a master, due to the fact that the scope of the cross-

claim indicates that the proofs might well become protracted. The Court is of the opinion that it is entirely within the spirit and intent of Rule 53(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., thereby to provide for the expeditious disposition of this litigation and, at the same time, relieve the pressure on an already congested calendar.

The motion of defendant United Artists Corporation to dismiss the cross-claim is hereby denied, and the cause is referred generally to William D. Saltiel, Esq., (1 N. LaSalle Street, Chicago) as Master to hear and report.