Lazarus KRINSLEY, Plaintiff-Appellee,

v.

UNITED ARTISTS CORP., Defendant-Appellee,

and

Frances Papas et al., Adm., etc., et al., Defendants-Cross-Claimants-Appellants.

No. 11191.

United States Court of Appeals Seventh Circuit.

Aug. 10, 1955.

Thomas C. McConnell, Chicago, Ill., James O. Smith, Chicago, Ill., for appellant.

David Levinson, Harold D. Shapiro, Raymond Harkrider, Chicago, Ill., Walter S. Beck, New York City, Harold D. Shapiro, Chicago, Ill., of counsel, for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

In his interpleader action filed July 21, 1950, under 28 U.S.C. § 1355, plaintiff Krinsley joined as party defendants United Artists Corporation, C. J. Papas, Milwaukee Towne Corporation (formerly named Miller Theater Corporation), John S. Papas, Spiro J. Papas, Andrew M. Spheeris, Andrew J. Spheeris and George J. Spheeris. These defendants cross-claimed in their consolidated answer to Krinsley's complaint. The gist of the initial pleading pivots on Krinsley's position as escrowee established by an agreement, dated September 17, 1946, between himself, United Artists Corporation and C. J. Papas. These latter two parties deposited three executed contracts with their escrowee, all of which were dated June 11, 1946 and constituted three separate agreements between: (i) United Artists Corporation and John S. Papas, C. J. Papas, Spiro J. Papas, Andrew M. Spheeris, Andrew J. Spheeris, George J. Spheeris, (ii) Miller Theater Corporation and United Artists Corporation and, (iii) Miller Theater Corporation and C. J. Papas.

Stripped of all other commitments the pith of the problem engendered by the escrow arrangement lies in this provision of the escrow agreement:

"In the event a final decree is entered in any court of competent jurisdiction against the United Artists Corporation *declaring that* the *agreements* * * * (ed: the three already itemized) * * * *is or are unlawful,* the Escrowee shall tear off the signatures on the * * * agreements, mark each said agreement 'Void' and shall * * * mail one set * * * to * * * (United Artists Corporation) * * * and shall mail the other set to Papas * * *. If, however, no such decree is entered within two * * * years from June 11, 1946, then the Escrowee shall mail one set to * * * (United Artists and the other to Papas) * * * and said agreements shall thereupon become effective as of their respective dates, towit June 11, 1946." (Italics supplied.)

United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 precipitated Krinsley's dilemma because Papas directed him to tear off the signatures on all contracts deposited with him, on the theory they were unlawful under that decision. On the other hand Krinsley was instructed by United Artists to turn over the three contracts to it intact. Caught in this conflict, Krinsley sought construction of the escrow agreement below.

In their cross-claim, defendants (except United Artists Corporation) allege that United Artists, in combination with various other producers, exhibitors and distributors engaged in a conspiracy to monopolize the exhibition of motion pictures and the operation of motion picture theaters in Milwaukee, Wisconsin, violative of §§ 1–2, Sherman Anti-Trust Act. 15 U.S.C.A. §§ 1–2. That conspiracy, according to cross-claimants, supplied the economic coercion for and environment of duress under and by which the three contracts were executed. They also alleged that acquisition of stock contemplated in those agreements was illegal under the holding in United States v. Paramount Pictures, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. Accordingly, cross-claimants sought a decree, below, enjoining enforcement of the three agreements, on deposit, and requiring cancellation of shares held by United Artists in Milwaukee Towne Corporation.

United Artists' motion to dismiss this cross-claim was denied after a hearing and briefing. Its attack on the cross-claim rested upon these grounds, summarized by the district judge [94 F. Supp. 480]: "(1) It does not state a claim under the anti-trust laws of the United States; (2) It prays for cancellation of shares of stock allegedly acquired in violation of the anti-trust laws, which is not a remedy provided for in the pertinent statutes; (3) It fails to allege a claim for rescission of the trans-

action alleged; (4) It alleges facts showing that cross-claimants' remedy at law is adequate; (5) It does not allege a tender of, or make a tender of the consideration received by cross-claimants in the transaction alleged wherefore said cross-claim is wholly without equity." In his first memorandum, November 24, 1950, the district judge pretty well describes the contours of the terrain shaped by the pleadings:

"The cross-claimants contend, and the Court agrees, that the cross-claim does not purport to state a claim under the Sherman Anti-Trust Act. The cross-claim neither relies upon that Act to provide jurisdiction, nor does it pursue a remedy granted to a private litigant under that Act. True, it alleges that defendant has engaged in practices that are violative of the anti-trust laws, but apparently does so solely for the purpose of establishing the invalidity of the subject agreements and transfer of stock. The relief sought is of an equitable nature that has been traditionally available to an innocent party to an invalid contract.

"Cross-claimants further contend that, although these specific agreements were not declared invalid in United States v. Paramount * * * [334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260], the Supreme Court did, however, hold agreements of these types to be illegal. A close analysis of that decision indicates that cross-claimants endeavor to apply it too broadly. * * * "

Then follows rather detailed reasoning by the trial judge on which he rested his view of the case before him in the Paramount case setting. But because of the following aspects of the case, the court below thought invocation of Rule 53(b), Federal Rules of Civil Procedure, 28 U.S.C.A., to be appropriate:

"Defendant apparently is of the opinion that, since the Supreme Court failed to declare these specific agreements, or even agreements of

this type, to be illegal within the time limit set forth in the escrow agreement, i. e., June 11, 1948, the provisions of the escrow should be fulfilled, therefore, by delivery of the subject agreements to the parties. This contention can be disposed of summarily, for time cannot be of the essence in a contract which might prove to be illegal. The mere introduction of a time limitation in a contract is insufficient to induce a court to exercise its legal or equitable powers to validate that which is invalid.

"Furthermore, there is an additional reason for denying defendant's motion. The cross-claim alleges that the contracts were executed as the result of economic coercion and duress. It follows, therefore, that regardless of whether or not the cross-claimants are successful in proving that the agreements provide for prohibited joint ownership, franchise or block-booking, they should still be permitted an opportunity to prove this distinct claim."

After an extended hearing the master recommended issuance of an order finding the three deposited agreements illegal and void. His detailed report also culminated in suggestions that (i) Krinsley, by decree, be directed to mark those agreements "void" and tear off the signatures, (ii) United Artists be enjoined from making any further claim "to 200 shares of Class B stock of MT Corp.," (iii) the stock "be forthwith returned to MT Corp. upon the payment by it to UA of the sum of $10,000 plus accrued interest at the rate of 5%."

A welter of objections followed in, and to, the wake of the master's report; cross-claimants rallied in support of that report with myriad detailed answers to the objections. In his final disposition of this case reported below as Krinsley v. United Artists Corp., D.C.1954, 119 F. Supp. 665, the trial judge sustained certain objections to his master's report and thereupon made additional findings of fact (id. 675). In short, under the

district court's conclusions of law, validity was accorded those three agreements, and they were held non-violative of any United States Statute. Finding a failure to sustain the burden of proof on the issue of rescission, cross-claimants were denied relief from their escrow agreement. Delivery to United Artists of the three agreements, unmutilated, was then decreed. It is from that final decree of March 17, 1954 that defendant, cross-claimants, except United Artists Corporation, have appealed.

Since the district judge's final memorandum, findings of fact, conclusions of law and decree have been printed in the Federal Supplement, it is unnecessary to burden this opinion with its details. Indeed we think status of the district judge's findings, on review, is the threshold question. Of course, there are several levels and facets reflected by findings, which have traveled from master to district judge, to court of appeals. Since the court below rejected key findings of the master and substituted its own it might be said a question arises as to whether we can reverse the district judge's overruling of the master or, whether we simply examine the findings underlying the final decree, or open up all aspects of this record and determine which findings, master or court, should stand.

Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A., provides this benchmark:

> "In an action to be tried without a jury the court *shall accept the master's findings of fact unless clearly erroneous.* * * * The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."
> (Italics ours.)

But that talisman cannot be viewed in isolation for Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., lays down these relevant precepts:

> "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon. * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. *The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court.* * * * *"* (Italics supplied.)

■ Judge Evans, speaking for the majority in Carter Oil Co. v. McQuigg, 7 Cir., 1940, 112 F.2d 275, 279 and Judge Lindley, delivering the court's majority opinion in Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 1953, 207 F.2d 912, 920, have both treated with the status of master's reports and a district judge's relationship to findings of fact made after hearings, by masters. The opinion written on rehearing in Uihlein v. General Electric Co., 7 Cir., 1931, 47 F.2d 997, 1001 reflects much of the underlying reasoning and authorities tapped for the Carter Oil case. See also: Sanitary Farm Dairies v. Gammel, 8 Cir., 1952, 195 F.2d 106, 118. The Ferroline Corp. opinion contains Judge Lindley's cogent statement of the basic principle:

> "Findings of fact by a master are binding on the trial court unless clearly erroneous. F.R.Civ.P. 53(e) (2), 28 U.S.C.A. The threshold question here then is the *same as it was in the court below,*—whether, as a matter of law, the master's findings of fact were *clearly erroneous.* Even where * * * the oral testimony is largely uncontradicted, the trial court must respect the advantage the master enjoyed when he saw and heard the witnesses and was thus enabled to judge of their veracity and credibility * * * (citing) * * *. Neither the trial court nor this one may refuse to recognize the findings 'merely be-

cause of a difference in personal persuasion \* \* \* or a dissatisfaction with the result reached. \* \* \*' (Cases collected.)"[1]

An examination of Krinsley v. United Artists Corp., D.C.N.D.Ill.1954, 119 F.Supp. 665, 671 shows that the district judge reviewed "\* \* \* the entire record carefully, in an attempt to marshal the most support for each of the Master's findings." But the judge below found that certain findings of fact made by the master were produced by unwarranted inferences (id. 674). Rule 53(e) (2) is not, as we read it, an invitation to abdicate the judicial function upon receiving a master's report.

 Conceivably the district judge thought that the master's inferences drawn from evidence, appraised as inadequate by that judge, produced erroneous findings of fact. Nowhere in Krinsley v. United Artists Corp., D.C. N.D.Ill.1954, 119 F.Supp. 665 do we find sufficient definite recitals of matters showing how in the district judge's view the master's findings of fact are actually "clearly erroneous." Objections to those findings of fact made by the master were sustained below without identifying the particular objections launched against the master's report and with an utter paucity of clearly assigned grounds for dissipating answers made to such objections. There is, to be sure, a generalized atmosphere and conflicting climate of opinion between judge and master reflected in that memorandum. But the questions raised by this appeal will not be ripe for our consideration until the District Court has had another opportunity to show with specificity wherein the master's findings of fact are "clearly erroneous." Because this is a voluminous record and since there are a multitude of objections, and answers, to the master's report, it is necessary to remand this cause for further consideration and detailing, without any expression from us on the merits. Consequently the case is remanded to the District

Court for the purpose of making specific findings in the area mentioned. Kelley v. Everglades Drainage District, 1943, 319 U.S. 415, 421–422, 63 S.Ct. 1141, 87 L.Ed. 1485; Maher v. Hendrickson, 7 Cir., 1951, 188 F.2d 700, 702.

We withhold our ruling on United Artists Corporation's alternative motion to dismiss this appeal or affirm the decree appealed.

Remanded with directions.

---

1. Ibid., 207 F.2d 920, Italics added.