## MORRIS PLAN INDUSTRIAL BANK v. HENDERSON.

### No. 61.

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1942.

Mordecai S. Jacobsen, of Lynbrook, N. Y., for appellant.

Henry W. Parker, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order of the district court, reversing the order of a referee which granted a bankrupt his discharge and denying the discharge. The objecting creditor interposed four specifications of objection: (1) that the bankrupt had committed perjury in failing to schedule a claim against his brother-in-law for $2,000; (2) that he had failed to keep adequate books and records; (3) that he had failed to give a satisfactory explanation of the deficiency of his assets; (4) that he had fraudulently concealed a Dodge sedan car which had been transferred to his wife. In reversing the referee's order, the judge sustained the first objection but did not pass upon any of the others; the creditor had abandoned the third objection before the referee.

The first question is as to the extent of our review: whether the case comes before us as it came before the district judge, or whether he had a larger latitude in reviewing the referee's findings than we have. General Order 47, 11 U.S. C.A. following section 53, requires the judge to "accept his [the referee's] findings of fact unless clearly erroneous." These are the same words as those used in Rule 53 (e) (2), 28 U.S.C.A. following section 723c, and substantially the same as those in Rule 52(a) which requires us not "to set aside" the finding of a judge unless it too is "clearly erroneous." It is true that logically a distinction can be drawn between holding a referee's finding to be "clearly erroneous" and holding a judge's finding that a referee's finding is "clearly erroneous" to be "clearly erroneous." Possibly the Seventh Circuit meant to make that distinction in a case that arose under General Order 47 before it was amended. In re Duvall, 103 F.2d 653. We should regret, however, to be compelled now to introduce such refinements into the solution of what is after all only a practical problem. Everyone forms his conclusions from testimony, not only from the words

which he hears the witnesses utter but from their appearance when they utter them; and the added weight to be attached to a referee's finding, or to a judge's (if he sees the witnesses) depends upon the fact that he has in effect had evidence before him which cold print does not preserve. So far, therefore, as the words themselves leave any latitude, the referee's conclusion ought to prevail because we cannot appraise the cogency of the lost evidence. In the end, as we have often said, the responsibility for the right conclusion remains the judge's as indeed it does ours; In re Kearney, 2 Cir., 116 F.2d 899; but we have again and again held that except in plain cases he should accept the referee's findings. In re Slocum, 2 Cir. 22 F.2d 282; In re Gordon & Gelberg, 2 Cir., 69 F.2d 81; In re Goldner-Siegel Corporation, 2 Cir., 71 F.2d 152; In re Wisun & Golub, Inc., 2 Cir., 84 F.2d 1; In re Patrizzo, 2 Cir., 105 F.2d 142; In re Connecticut Co., 2 Cir., 107 F.2d 734. We therefore hold that the question is the same in this court as it was in the district court.

■■■■ That being true, we cannot see any adequate reason for refusing to accept the referee's finding upon the first objection. A bankrupt does not commit an offense under § 29(b) (2), 11 U.S.C.A. § 52(b) (2), unless he swears to what he knows to be false; and, although in the case at bar the burden shifted to the bankrupt by virtue of the proviso of § 14(c), 11 U.S.C.A. § 32(c), that did not strip his testimony of whatever credibility his appearance and bearing gave it. On the record the testimony presented this conflict. On the one hand the bankrupt's brother-in-law owed him about $2,000 and two dollars a week could be collected from him by garnishment, for he had a salary of $20. (The trustee has taken judgment on the claim and means to press it; his attorney has even appraised it at $1,200, though his testimony has little more support than the merest guess.) On the other hand, the brother-in-law was so poor that he had sent his son to board with the bankrupt (himself a very poor man); the Federal income tax authorities had passed the debt as worthless (though not so the New York authorities); the bankrupt's counsel had advised him to omit it from his schedules as worthless. On such a record either conclusion was reasonable: that the bankrupt wished to protect his brother-in-law from precisely the kind of pursuit to which the trustee had

subjected him; or that, viewing the labor and expense of collecting the claim at the rate of two dollars a week and the general impoverishment of his debtor, he really believed the claim to be worthless. We can see no reason for saying that the referee might not have taken as the determining factor the bankrupt's carriage when he appeared in the bankruptcy court.

■■■■ The judge did not pass upon the second and fourth objections, as we have said, but the objecting creditor properly argues that if they were proved, the discharge should be denied, even though the judge was wrong as to the first objection. As to the second, it is true that the bankrupt did not keep any records, but it is hard to see why any were necessary He had been in ill health for six years and had given up his business, though he was employed on a salary. All he apparently needed was a record to prepare his income tax return, and for that he could go to his employer. It is true that his debts were over $6,000; but, as he had substantially no assets whatever, it was of no importance to keep a record of debts on which his creditors could recover nothing, and the amount of which they would individually know in any event, if they cared to prove.

■■■■ The fourth and last objection was the transfer to his wife of an old Dodge motor car valued at $550. After his health failed, he and his wife were much straitened financially. She swore that from time to time she pawned her jewelry and used the money for household expenses; and she confirmed this story to some extent by cheques and entries in bankbooks. It must be confessed that the precise nature of the transfer of the car to the bankrupt's wife is left most uncertain. The bankrupt swore on his first examination that he gave it to her because he was no longer able to drive it, but on the hearing on his discharge he added as another reason that he owed her for the advances we have mentioned. She, on the other hand, at the first hearing mentioned her advances as one motive for the transfer, and at the hearing on the discharge she said that he told her that she "might as well take the car over" and that "he owed me money too." It is possible to read the transaction as a gift, or as a transfer of the car as security. Probably the parties did not themselves know just how they meant to leave the ownership of the car; but that does not mean that they

were trying to defraud the bankrupt's creditors. It was permissible to interpret the transaction as a transfer to secure the advances. No doubt such transactions should be subjected to scrutiny and courts do view them with a jealous eye, but they can be real and honest, and it would certainly be improper to refuse them credence in all instances. The situation was one in which the referee's judgment was final.

Order reversed; discharge granted.