**UNITED STATES of America**

v.

**TWIN CITY POWER COMPANY OF GEORGIA et al.**

No. 15084.

United States Court of Appeals, Fifth Circuit.

April 12, 1955.

John F. Cotter, Atty. Dept. of Justice, Edmund B. Clark, Dept. of Justice, Perry W. Morton, Asst. Atty. Gen., Washington, D. C., William C. Calhoun, Augusta, Ga., for appellant.

David W. Robinson, Robinson, Robinson & Dreher, Columbia, S. C., for appellees.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

These are consolidated appeals from judgments entered in condemnation proceedings in the United States District Court for the Southern District of Georgia. They present on substantially the same record and in the same way the self same question, "whether the value of land as a potential power site on a navigable stream is an element of just compensation under the Fifth Amendment", which was presented for the decision of the Court of Appeals for the Fourth Circuit in appeals from judgments in three condemnation suits instituted in the United States District Court for the Western District of South Carolina. Indeed the United States, on page 13 of its brief in this case, states, "The foregoing is the identical argument made by the government to the United States Court of Appeals for the Fourth Circuit in its appeals from the judgments entered in the companion cases to these."

Copying for our convenience, as an appendix to its brief, the opinion of the Court of Appeals for the Fourth Circuit[1] and characterizing it as the only one in the books so holding, it goes on to say: "In reaching this unique conclusion the opinion ignores the explicit holding of the leading case of United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063, that the running water, i. e., the power potential, of a navigable river is not susceptible of private ownership and that riparian land is not enhanced in value by that potential".

1. U. S. v. Twin City Power Co., 215 F.2d 592.

Urging that the challenged opinion not only does violence to the opinion in the Chandler-Dunbar case but is also in direct conflict with two cases in the Ninth Circuit, Continental Land Co. v. United States, 88 F.2d 104 and Washington Water Power Co. v. United States, 135 F.2d 541, and declaring in substance that the judges of the Fourth Circuit, like sheep, have gone astray, the brief concludes thus: "It is submitted that the decision of the Fourth Circuit is entitled to no weight here because it fails to follow United States v. Chandler-Dunbar, gives no effect to the uniform dicta of the Supreme Court and other courts of appeals recognizing the principle of that case, and is in conflict with the decisions of the Court of Appeals of the Ninth Circuit".

We have read with care and attention the opinions of the district judges in this and the companion cases and the opinion of the Court of Appeals affirming the judgments in the companion cases from the Fourth Circuit. These opinions have our full approval, and, but for the fact that appellant insists so vigorously that they are in conflict with the Chandler-Dunbar case and the two Ninth Circuit cases, we should content ourselves with announcing that we affirm the judgments for the reasons given in them. Because, however, of the vigor of appellant's attack, we have concluded to say that we are in complete disagreement with appellant's view that the opinion of the Supreme Court in the Chandler-Dunbar case is either directly or in its teachings and tendencies in conflict with the opinion of the Court of Appeals in United States v. Twin City Power Co., supra.

As to the opinions of the Ninth Circuit in the Continental Land and Washington Power cases, while we agree with appellant that the opinions in those cases are purportedly based on the decision in Chandler-Dunbar and perhaps in decision and certainly in dicta are contrary to the Twin City decision, we agree with the appellees that to the extent that they are based on the Chandler-Dunbar case, they are wrongly based and are contrary to the fundamental principles governing the scope and application of the Just Compensation clause of the Fifth Amendment as those principles have been, consistently and without varying, authoritatively declared and applied.

In the opinion in the Twin City case, the court, carefully pointing out the reason for the differences in point of view and treatment accorded in the two circuits, correctly shows that they arise from the failure of the Court of Appeals for the Ninth Circuit to see and draw the distinction between the taking of the bed of a navigable stream and fast lands adjoining for purposes of navigation and the taking, as here, of fast lands for entirely different purposes. Conceding that if the taking in this case had been, as it was in the Chandler-Dunbar case, of the bed of the stream and fast lands adjoining for the improvement of navigation, appellees would not have been entitled to pay for the water power value of the land taken, the court, supporting its position by citing many cases, clearly points out the difference between the two situations. This difference is that, in the Chandler-Dunbar case, the United States took the bed and adjoining fast lands of a navigable stream for the purposes of navigation, and it was held that the water power value of the land was not a proper element in determining the value of the land taken in condemnation because while the title to the bed of the stream and to the fast lands adjoining was in the landowner, this title was completely subject to the rights of the United States to improve the stream for navigation and it could not, therefore, be justly said that there was taken from the landowner either the bed of the stream, the water running in it, or the right of the landowner to use the stream for water power purposes. Here the taking is not for purposes of navigation but for use by the United States for a water power project, the very use for which the landowner acquired and was holding the land and it could not, therefore, be justly said that the value of it could be taken from

him without paying him just compensation therefor.

Nothing in the facts or in the decision of the Dunbar case at all supports the claim which the United States here asserts. Stating [229 U.S. 53, 33 S.Ct. 671], "The technical title of the Chandler-Dunbar Company, therefore, includes the bed of the river opposite its upland on the bank to the middle thread of the stream * * *" and that "By reason of that fact, and the ownership of the shore, the company's claim is, that it is the owner of the river and of the inherent power in the falls and rapids, subject only to the public right of navigation", the Supreme Court went on to say in that case: "This title of the owner of fast land upon the shore of a navigable river to the bed of the river is, at best, a qualified one. It is a title which inheres in the ownership of the shore; and, unless reserved or excluded by implication, passed with it as a shadow follows a substance, although capable of distinct ownership. It is subordinate to the public right of navigation, and however helpful in protecting the owner against the acts of third parties, is of no avail against the exercise of the great and absolute power of Congress over the improvement of navigable rivers."

Declaring that under these circumstances and as against the exercise of this navigable right Chandler-Dunbar did not own the water power in the river and therefore cannot claim that the value of its land attributable to such ownership has been taken from it, the Supreme Court thus proceeds to state with clarity and precision why, upon principle and authority, the Chandler-Dunbar claim must be denied:

"It is a little difficult to understand the basis for the claim that in appropriating the upland bordering upon this stretch of water, the government not only takes the land, but also the great water power which potentially exists in the river. The broad claim that the water power of the stream is appurtenant to the bank owned by it, and not dependent upon ownership of the soil over which the river flows, has been advanced. But whether this private right to the use of the flow of the water and flow of the stream be based upon the qualified title which the company had to the bed of the river over which it flows, or the ownership of land bordering upon the river, is of no prime importance. In neither event can there be said to arise any ownership of the river. Ownership of a private stream wholly upon the lands of an individual is conceivable; but that the running water in a great navigable stream is capable of private ownership is inconceivable.

"Whatever substantial private property rights exist in the flow of the stream must come from some right which that company has to construct and maintain such works in the river, such as dams, walls, dykes, etc., essential to the utilization of the power of the stream for commercial purposes. * * *

* * * * * *

"Upon what principle can it be said that, in requiring the removal of the development works which were in the river upon sufferance, Congress has taken private property for public use without compensation? In deciding that a necessity existed for absolute control of the river at the rapids, Congress has, of course, excluded, until it changes the law, every such construction as a hindrance to its plans and purposes for the betterment of navigation. The qualified title to the bed of the river affords no ground for any claim of a right to construct and maintain therein any structure which Congress has, by the act of 1909, decided in effect to be an obstruction to navigation, and a hindrance to its plans for improvement. That title is absolutely subordinate to the right of navigation, and no right of private property would have been invaded if such submerged

lands were occupied by structures in aid of navigation, or kept free from such obstructions in the interest of navigation. Scranton v. Wheeler, 179 U.S. 141, 163, 21 S.Ct. 48, 45 L.Ed. 126, 137; Hawkins Point Light-House Case [C.C.], 39 F. [77], 83. We need not consider whether the entire flow of the river is necessary for the purpose of navigation, or whether there is a surplus which is to be paid for, if the Chandler-Dunbar Company is to be excluded from the commercial use of that surplus. The answer is found in the fact that Congress has determined that the stream from the upland, taken to the international boundary, is necessary for the purposes of navigation. That determination operates to exclude from the river forever the structures necessary for the commercial use of the water power. That it does not deprive the Chandler-Dunbar Company of private property rights follows from the considerations before stated." U. S. v. Chandler-Dunbar, 229 U.S. at pages 69–72, 33 S.Ct. at pages 674–675.

Nothing either in what was decided or what was said in that case is authority for, or at all supports, the claim made by the government here. It is true that this is not the first time that the position taken here as to the effect of the decision has been stated or advanced. Put forward in the two cases from the Ninth Circuit on which the government relies, it was approved there at least in dicta. It has never, however, been accepted by the Supreme Court. Put forward by the United States and accepted by a minority, it was rejected by the majority in Grand River Dam Authority v. Grand Hydro, 335 U.S. 359, 69 S.Ct. 114, 93 L.Ed. 64. Again put forward it was again rejected in United States v. Gerlac Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231, in United States v. Kansas City Life Insurance Co., 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277, and in Federal Power Commission v. Niagara

Mohawk Power Corp., 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 666.

■■ The situation in this case as to the exercise of the power over navigation, is exactly the reverse of that in the Chandler-Dunbar case. Navigation has been eliminated by a solid dam, and a power house has been built to devote the entire flow of the Savannah River to the production of hydro-electric power. Here fast lands of Twin City are condemned in order to appropriate them to the uses for which Twin City acquired and held them, and the Constitution provides for and requires the payment of compensation, the measure of which is market value fairly determined, including a consideration not only of present use but also of the highest and more profitable use for which the property is adaptable and needed in the reasonably near future by itself or in combination with other properties.

The findings of the district court based on the overwhelming weight of the evidence established the fact that these properties were adaptable and needed for water power purposes, and had been held by them over the years for such use. They have been taken for and devoted to that use by the government. No good reason exists why the landowners should be deprived of their full market value merely because they border on a technically navigable stream. On the contrary, considerations of justice and of constitutional right require that they not be so deprived.

Sophistry and wishful thinking aside, the matter is just that simple. Appellant, moving under the ostensible purpose and right of taking the property of appellees for the improvement of navigation but the real purpose and right of taking it for a water power development, the same purpose for which the appellees bought and are holding it, if successful will defeat the fundamental principles as they are declared in the Fifth Amendment to the Constitution by taking private property without paying just compensation therefor.

The appellees, on the other hand, pressing their claim on the basis of the real facts underlying and supporting their contention, are seeking just compensation only for that which they have and own and which may, therefore, not be taken from them without paying just compensation therefor.

In this situation, there is only one course that a court, great in the majesty of justice as well as of power, can take. Mindful as we are that the founders of our government "secured in a written constitution every right which the people had wrested from power during a contest of ages and that, by that constitution, which is a law for rulers and peoples and covers with the shield of its protection all classes of men at all times and under all circumstances, and the laws authorized by it, this question must be determined",[2] we must and will approve the decision of the trial court and order its judgments

Affirmed.

---

**2.** Ex Parte Milligan, 4 Wall. 2, at pages 119, 120, 18 L.Ed. 281.