**UNITED STATES of America,**
**Appellant,**

v.

**TWIN CITY POWER COMPANY OF GEORGIA et al., Appellees.**

**TWIN CITY POWER COMPANY OF GEORGIA, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16743.**

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1958.

Rehearing Denied April 16, 1958.

---

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Harold S. Harrison, Dept. of Justice, Washington, D. C., William C. Calhoun, U. S. Atty., Augusta, Ga., W. Reeves Lewis, Asst. U. S. Atty., Savannah, Ga., for appellant.

David W. Robinson, Columbia, S. C., for appellees.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

RIVES, Circuit Judge.

These are appeals from three judgments rejecting the findings and report of a commission appointed under Rule

71A(h),[1] and determining, by the district court itself, the compensation owed by the United States to the Twin City Power Company of Georgia for 2908.35 acres of land located in Lincoln County, Georgia and condemned for the construction of the Clark Hill Reservoir on the Savannah River in South Carolina and Georgia.

The district courts in South Carolina and in Georgia appointed the same commissioners. Pursuant to an opinion by Judge Wyche of the South Carolina District Court reported in United States v. 1532.63 Acres of Land, 1949, 86 F.Supp. 467, each district court originally ruled that the commission could value the lands for hydro-electric power development. The commission found that the highest and most profitable use for which the property was adaptable was that of a reservoir site for dams on the Savannah River, and that for such use the value of the lands in Georgia was $785,132.26. Each district court adopted the report of the commission as to the value of the lands in that State. See the opinion of Judge Wyche reported in United States v. 3,928.09 Acres of Land, D.C.1953, 114 F.Supp. 719. The Fourth Circuit af-

firmed, United States v. Twin City Power Co., 1954, 215 F.2d 592, as did this Court, 1955, 221 F.2d 299. The Supreme Court reversed on the ground that the United States did not have to pay the value of the lands for a reservoir site on a navigable river. United States v. Twin City Power Co., 1956, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240; Id., 350 U.S. 956, 76 S.Ct. 346, 100 L.Ed. 832, rehearing denied 350 U.S. 1009, 76 S.Ct. 648, 100 L.Ed. 871.

At the request of counsel for the parties, the commission had made alternative findings of fact, and had determined an agricultural and wild forest valuation of the lands in Georgia to be $90,548.25, only about 11.7% of their value for power purposes. The district court had originally declined to pass upon that alternative valuation. On remand after the Supreme Court decision, the district court held that the commission's alternative findings based on agricultural and forest values were clearly erroneous, made its own findings, and entered judgments accordingly for a total of $222,-710.95, more than twice the value for such uses as determined by the commis-

1. "(h) Trial. If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court." Rule 71A(h), Federal Rules of Civil Procedure, Title 28 U.S.C.A.

Rule 53(e) (2) reads as follows:

"(2) In Non-Jury Actions. In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Rule 53(e), (2), Federal Rules of Civil Procedure, Title 28 U.S. C.A.

sion.[2] The South Carolina District Court likewise held the commission's findings clearly erroneous and made its own findings. Its judgment has been

2. In stating and applying the clearly erroneous standard and making his own findings, the district judge said in part:

"The controlling principles in reviewing Commissioners' findings and recommendations is thus stated in United States v. Waymire, 10 Cir., 1953, 202 F. 2d 550, 553:

" 'Under the plain language of Rule 53, it is the duty of the court to accept the findings of fact made by a master unless they are clearly erroneous. But the findings of a master may be modified in part, or rejected in toto, if they are clearly erroneous. In like manner, under the equally clear language of Rule 71A(h), the findings and awards of a commission shall be accepted unless they are clearly erroneous. But they may be modified in part, or rejected in toto, if they are clearly erroneous. And even though there is evidence to sustain findings of a master or a commission, as the case may be, they are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed.'

"With this principle as a guide, I have carefully reviewed all of the evidence on agricultural value to determine on the entire record whether the Commissioners' findings are clearly erroneous and if so, what is the proper award to be made for each of the tracts involved.

"Twin City offered two experienced land appraisers, one, W. N. Henderson of Ninety-Six, in Greenwood County, South Carolina, is a Clemson College graduate with 14 years of experience as a Federal Land Bank appraiser and 4 years with FHA. He has testified in a number of condemnation cases tried before me. The other, Benjamin R. T. Todd, was educated at Clemson and at the Naval Academy. He had long years of experience as Senior Appraiser with the Federal Land Bank in Columbia. Each has appraised many tracts of land in the area of the Clark Hill reservoir.

"The most careful and detailed study of the Twin City lands by any witness in the case was made by Mr. Henderson. He found that about 400 acres of the 2900 in Georgia were rich bottom lands suitable either for row crops, for grain crops, or for grass farming. He made studies as to the cost to put these acres in first-class conditions for these purposes and what they would produce, and their present market value. His conclusion was that aside from the timber and pulp wood thereon, these acres had a value of $100.00 per acre.

"The remaining 2500 acres he testified could be best used for pasturage, or for pine tree farming. He gave detailed figures on the rapidity of the growth of the pine, its cost to plant, its market value. He testified that these properties were located in the fastest growing pine timber area in the United States. He fixed the market value of about 150 acres of this land at $70.00 per acre, and the remainder at $80.00. He fixed the value of saw timber and pulp wood on the property at $15,000.00. Mr. Henderson's appraisal totalled $254,230.20.

"Mr. Todd's valuations were somewhat higher. He gave a figure of $100.00 per acre for the entire 2900 acres, or a total of $290,835.00.

"The United States offered as its principal witness Spencer Cooley, who has testified for the Government in most of these condemnation cases, frequently before this Court. Mr. Cooley, without appraisal experience in this part of the country, relied exclusively on a 'comparative sales' approach. From the records of Lincoln County, where these lands are located, he prepared a list of 90 transfers of title and from this list of 90 presented as the basis for his testimony only four sales, of which none was made after June, 1948, though more than half of the Georgia lands of Twin City were taken in 1950. Three of these four sales were of properties in the reservoir area made after notice of the Clark Hill development was widespread. Sales of property about to be taken by the United States have little value as a yardstick for determining the fair market value of neighboring tracts since no farmer would wish to buy land soon to be condemned.

"The United States also offered C. E. Ward, a farmer and cattle raiser who has traded some for his own account but has never had appraisal or brokerage experience. Mr. Ward started to appraise the Twin City properties but after having appraised one large and one small tract, both unidentified, had a 'spell and had to quit'. For some reason the Commissioners based their holding of Agricultural value as to these Georgia lands on Mr. Ward's testimony. It is my view, however, that the constitutional right of Twin City to just compensation may not be based on the evidence of a witness who at best only appraised two of the twelve tracts of land here taken.

"The other two land witnesses were Augusta real estate brokers, Gould Barrett and H. H. Bell. Neither had sold land in this area during the five years

affirmed in an opinion by Chief Judge Parker of the Fourth Circuit in which that Court held:

"We review the District Judge, not the commissioners; and under Rule 52(a) we may not set aside his findings unless they are clearly erroneous. When he has set aside the findings of a master or commissioners, we must give consideration to the fact that they saw and heard the witnesses and that he did not, and we must pass upon his findings with this in mind; but, unless we can then say that his findings are clearly erroneous when viewed in this light, we must accept them. In the case before us, we cannot say that the findings of the judge were clearly erroneous. On the contrary, we think that he has demonstrated that they rest upon a reasonable basis and that his overruling of the report of the commissioners and adopting a valuation different from theirs should be sustained." United States v. Twin City Power Co., 1957, 248 F.2d 108, 112.

The Government insists that the question for this Court is whether the findings of the commission are clearly erroneous, and that "the Fourth Circuit has placed itself in direct conflict with established law in this respect."

preceding 1952 and had little familiarity with the Twin City holdings. Mr. Barrett had found an increasing demand for this type of land for raising pine but thought the market value at the time of taking well below the figures given by Messrs. Henderson and Todd.

"On the timber value, the United States offered Clark D. Honnold, an experienced timber cruiser, who carefully appraised the timber on all of the tracts. The Commissioners accepted his appraisals, which total some $12,500.00. Their finding with reference to the timber is approved. Certainly it is not clearly erroneous.

"The Commissioners found that Twin City had assembled into one ownership this large block of land, and added $5.00 per acre for the increase in value attributable to this assembling. Neither side has objected to this holding and it is therefore adopted by the Court.

* * * * * *

"The most careful appraisal of the land as distinguished from the growing timber was by the witness Henderson. His experience as an appraiser lends weight to his valuation. The Commissioners described him as a competent land evaluator. My observation of him as a witness in other condemnation cases leads me to the same conclusion. After a study of all of the evidence it is my view that his testimony is entitled to more weight than that of the witnesses for the United States. However, I have concluded that in fixing just compensation the evidence of the Government witnesses should be given some weight and therefore in establishing the awards for the several tracts I have reduced the Henderson appraisals.

"The just compensation to which the owners of the respective tracts are entitled is as follows:

| "Tract No. | Acreage | | | | "Henderson Land Appraisal with Honnold Timber Appraisal |
|---|---|---|---|---|---|
| C/A 432 | Tract E–434 | 1064.47 | acres | | $78,267.50 |
| | Tract E–439 | 328 | acres | | 30,600.00 |
| | Total | | | | ................$108,867.50 |
| C/A 521 | Tract E–443 | 429.91 | acres | | $34,253.40 |
| | Tract E–446 | 128.03 | acres | | 8,100.65 |
| | Tract E–457 | 24.26 | acres | | 1,613.30 |
| | Tract E–498 | 3.20 | acres | | 267.00 |
| | Tract G–600 | 247.06 | acres | | 18,190.90 |
| | Total | | | | 62,425.25 |
| C/A 537 | Tract E–449 | 5.51 | acres | | 328.05 |
| | Tract G–616 | 121.53 | acres | | 9,286.45 |
| | Tract G–627 | 546.78 | acres | | 40,995.70 |
| | Tract G–694 | 10 | acres | | 808.00 |
| | Total | | | | ................$ 51,418.20" |

In support of its insistence, the Government cites the following cases: Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975, 976–977; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 1942, 130 F.2d 919, 925; Krinsley v. United Artists Corp., 7 Cir., 1955, 225 F.2d 579, 582. To that list many other persuasive decisions might be added. Judge Parker had himself in an earlier case, Mutual Savings & Loan Association v. McCants, 4 Cir., 1950, 183 F.2d 423, 426, 427, taken note of the conflict of authority on the question. In Phillips v. Baker, 5 Cir., 1948, 165 F.2d 578, 581, Chief Judge Hutcheson had said for this Court:

"Before proceeding to deal with the separate classes of appeals, a word or two of general application will be in order. The first and most important is that in dealing with the questions presented for our decision, we are not dealing with the ordinary situation of an appeal from findings of fact of a district judge which, under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, 'shall not be set aside unless clearly erroneous'. We are, on the contrary, dealing with findings made by the district judge, adverse to those of the referee, in respect to matters primarily remitted for decision to the referee and as to which it is provided [6] that 'the judge shall accept his findings of fact unless clearly erroneous'. Under that rule 'we have the same duty as the district court to accept the referee's findings, unless they are clearly erroneous'.[7] Under that rule, we, of course, take into consideration the fact that the district judge has refused to accept the referee's findings. But we do so not in determining whether the district judge's findings are clearly er-

roneous for that is not the matter before us. We do it in determining whether the referee's findings are, and we do this with the clearest recognition that the duty to determine whether the referee's findings 'must be accepted' and whether the district judge has erred in not accepting them is not the district judge's but ours.

"6. General Order of Bankruptcy 47, 11 U.S.C.A. following section 53.

"7. Mergenthaler v. Dailey, 2 Cir., 136 F.2d 182, 184."

Finally, the Supreme Court in Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 689, 66 S.Ct. 1187, 1193, 90 L. Ed. 1515, had said:

"* * * Our examination of the record leads us to acquiesce in these findings since they are supported by substantial evidence and are not clearly erroneous. And the court below correctly held that the District Court erred in failing to accept these findings and in creating a formula of compensation based upon a contrary view. Rule 53(e) (2) of the Federal Rules of Civil Procedure. * * * See Tilghman v. Proctor, 125 U.S. 136, 149–150 [8 S.Ct. 894, 31 L.Ed. 664]; Davis v. Schwartz, 155 U.S. 631, 636–637, [15 S.Ct. 237, 239, 39 L.Ed. 289]."

The holdings of the Supreme Court in Anderson v. Mt. Clemens Pottery Co., supra, and of this Court in Phillips v. Baker, supra, are each fully sustained by the unquestioned requirement of the several rules (see footnote 1, supra, and the rule in bankruptcy referred to by Judge Hutcheson in Phillips v. Baker, supra) designed to govern the conduct of the trial court.[3] All of the authorities agree that if the trial court has failed to observe that requirement its judgment cannot be sustained on appeal.[4]

Allbright-Nell Co., 7 Cir., 1940, 115 F. 2d 604; Arrow Distilleries v. Arrow Distilleries, 7 Cir., 1941, 117 F.2d 636; First Nat. Bank & Trust Co. of Racine v. Village of Skokie, 7 Cir., 1951, 190 F.2d 791; Helene Curtis Industries

3. Adams County v. Northern Pac. R. Co., 9 Cir., 1940, 115 F.2d 768, 779; Dyker Bldg. Co. v. United States, 1950, 86 U.S. App.D.C. 297, 182 F.2d 85, 87.

4. In re Connecticut Co., 2 Cir., 1939, 107 F.2d 734; Santa Cruz Oil Corporation v.

The really difficult problem arises when the district court, presumably cognizant of the "unless clearly erroneous" requirement of Rule 53(e) (2),[5] has rejected some or all of the commission's or the master's findings of fact, and in turn Rule 52(a) commands the appellate court not to set aside the district court's findings of fact "unless clearly erroneous." See 5 Moore's Federal Practice, 2d ed., Paragraph 53.12[4], p. 2987.

It must be remembered that the "clearly erroneous" burden, both under Rule 53(e) (2),[6] and Rule 52(a),[7] is not a single definite and certain burden, but varies in accordance with the differing opportunities and presumably different capacities of the several tribunals. Among other considerations, for example, that burden is especially strong when the commission has viewed and inspected the properties, or when credibility is questioned and the commission has had the opportunity to see and hear the witnesses, and is lighter when inferences for and deductions from opinion evidence may be drawn as well by the district court as by the commission, and still lighter when the appellate court in turn reviews the inferences drawn by the district court from the written transcript of evidence, though the "clearly erroneous" rule is still applicable.—See Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219.

There appears to be some similarity between the situation presented when the Supreme Court reviews a decision of a court of appeals denying enforcement to the order of an administrative tribunal[8] and that presented when a court of appeals reviews a judgment of a district court setting aside the report or findings of a master, referee, or commission. The governing rules are not, however, precisely the same, and the analogy must be applied with caution.

The decisions of the state courts are similarly in conflict as to the scope or rule of appellate review when the trial court and the master or referee do not agree. 5 C.J.S. Appeal and Error § 1670. Much of that conflict can probably be explained by the differing statutes or rules in force in the several states.

Indeed, the elaborate discussion in which we have indulged would seem to be quite unnecessary when it is observed that Rule 52(a) specifically provides for the application of the clearly erroneous rule to the findings of a master. That Rule, after stating that the district court's findings of fact are not to be set aside "unless clearly erroneous", goes on to state: "the findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court." Under the *inclusio unius, exclusio alterius* rule of construction, it would seem to be implied, or to follow, that the findings of a master, to the extent that the court rejects them, are not within the protection of the clearly erroneous rule.

We conclude, then, that the questions on appeal are: (1) whether the district court applied the proper standard in considering the findings; (2) whether it erred in rejecting the findings of the commission as clearly erroneous; and (3) whether, in turn, the findings made by the district court are clearly erroneous.

Whatever gloss may be given to the formulas, our careful study of the evidence has led us to a like conclusion to

v. Sales Affiliates, Inc., D.C.S.D.N.Y.1954, 121 F.Supp. 490.

5. In this case the district court expressly recognized the "unless clearly erroneous" rule. See Footnote 1, supra.

6. See Carter Oil Co. v. McQuigg, 7 Cir., 1940, 112 F.2d 275, 279.

7. See Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219.

8. In such cases the Supreme Court does "no more on the issue of insubstantiality than decide that the Court of Appeals has made a 'fair assessment' of the record." Federal Trade Commission v. Standard Oil Co., 78 S.Ct. 369, 372; National Labor Relations Board v. Pittsburgh S. S. Co., 340 U.S. 498, 502, 503, 71 S.Ct. 453, 95 L.Ed. 479.

that reached by the Fourth Circuit. The district court professedly, and we think actually, applied the proper standard to the commission's findings. We cannot say that the district court erred in rejecting the commission's findings as clearly erroneous, or that the findings of the district court are themselves clearly erroneous.

The commission was composed of a real estate operator of Augusta, Georgia, a banker of Greenwood, South Carolina, and an attorney of Columbia, South Carolina. There is no report of any personal inspection of the properties by the commission. After taking the testimony of a number of witnesses, the commission took the valuation of G. E. Ward for the Georgia lands, the timber valuation of Clark D. Honnold, and "added a value of Five ($5.00) Dollars per acre to these lands by reason of their having been collected and assembled into one unified ownership."

In rejecting the commission's findings under the clearly erroneous standard and making its own, the district court carefully considered and analyzed the testimony. (See footnote 2, supra.) Our study of the record convinces us that there is ample support for the views of the district court.

■ The Government insists that a mistake such as to warrant holding a finding clearly erroneous must be something more than merely a matter of credibility or of the weight to be accorded the testimony of witnesses. There was no claim or suggestion that any of the witnesses intentionally testified untruthfully. Apparently each gave his honest opinion. The weight to be accorded that opinion depended upon such things as the previous experience of the witness, the thoroughness of his inspection and study of the properties, and the reasons supporting his valuations. In passing upon such matters, the district court was in virtually as good position as were the members of the commission.

■ Nor do we think that the district judge was subject to criticism for referring to the opinion he had formed of

some of the witnesses from their testimony before him in similar cases. See Footnote 2, supra. Certainly, such knowledge of the witnesses would not disqualify the judge. It was natural, if not inevitable, in passing on the witness's testimony, that the judge should consider his own estimate of the worth of that witness's opinion, and for him frankly so to state was simple mental honesty. In each instance, the judge's personal opinion was supported also by the record in the present case. The judge's findings were not, we think, controlled by his prior knowledge and experience, and the minor extent to which they were so influenced was simply unavoidable.

■ The Government makes some suggestion that, under the principle developed in another recent decision of the Fourth Circuit, United States v. Cunningham, 1957, 246 F.2d 330, 331, the remedy for an incomplete consideration by the commission is resubmission to it, not the making by the court of its own findings. The issue was a simple one of valuation. There are no claims that the commission erred in ruling on the admissibility of testimony, or committed any other error of law. The commission reported its views on valuation, and it would be futile for the court simply to direct the commission to reconsider its findings. Under the circumstances of this case, we think that the court followed the better practice in proceeding, as we understand to be authorized by Rule 53(e) (2), Federal Rules of Civil Procedure. See also 30 C.J.S. Equity § 560. As Chief Judge Clark of the Second Circuit said in United States v. Bobinski, 1957, 244 F.2d 299, 302:

> " * * * Of course it was not necessary for the district judge to send the case to a commission once again, and he was completely justified in concluding the protracted litigation with findings of his own. United States v. 44.00 Acres of Land, supra, 2 Cir., 234 F.2d 410, certiorari denied Odenbach v. United States, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123."

■ The Government argues that due process requires the reversal of the judgment entered by the district court. This case is very different from Smith v. Dental Products Co., 7 Cir., 1948, 168 F.2d 516, where the master died after the testimony had closed but before he made a report. Here the commission reported, the testimony was all duly introduced and considered by the district court in line with the historic power of an equity court to accept, reject or modify the findings of a master. See Camden v. Stuart, 1892, 144 U.S. 104, 118, 12 S.Ct. 585, 36 L.Ed. 363, and cases cited; 30 C.J.S. Equity § 560; Rule 53(e) (2), Federal Rules of Civil Procedure. No case, so far as we know, has held that practice to be lacking in due process simply because the district court had not seen and heard the witnesses.

The quotations in footnote 2, supra, have been taken from the district court's order entered on November 2, 1956. On December 31, 1956, Twin City Power Company of Georgia filed its notice of appeal from that order. That order had concluded with the following paragraph:

> "It Is Therefore Ordered that judgments be entered in Civil Actions 432, 521 and 537 in the amount of the awards set out above, together with interest from the date of taking in the respective actions and subject to credit for the amounts paid in by the United States on the dates on which these payments were made to the Clerk of this Court. Let the District Attorney, after consultation with counsel for the landowners, submit appropriate judgments to the Court."

Formal judgments were entered in each of the three cases on January 15, 1957. Twin City filed no further notice of appeal.

The Government insists that Twin City's appeal is without foundation both for lack of jurisdiction and for lack of merit. The lack of merit is so clear that we forego deciding the jurisdictional question.[9]

Twin City has not specified error with respect to its flowage rights nor has it advanced in this Court the argument in support of such rights which it successfully asserted before the Fourth Circuit, possibly, we may surmise, because only 32 of the so-called "flowage acres" are situated in Georgia. Under our Fifth Circuit Rule 24, 2(b), 28 U.S.C.A., errors not specified will ordinarily be disregarded.

■ The only error claimed and argued on Twin City's appeal is that the five-to-four decisions of the United States Supreme Court in United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240, and United States v. Twin City Power Co., of Georgia 350 U.S. 956, 76 S.Ct. 346, 100 L.Ed. 832, are unsound. Those decisions are, of course, binding upon this Court.

Finding no reversible error in the record, the judgments are

Affirmed.

TUTTLE, Circuit Judge (dissenting).

Believing as I do that the Court has applied the wrong standard controlling our review of the judgment of the District Court, I respectfully dissent.

Added to the usual disinclination to dissent from my colleagues constituting a majority of the Court, I find a further reluctance from the fact that the Court of Appeals of the Fourth Circuit, whose opinion is stated to be at least a partial basis of the opinion of the majority here, has adopted the view of the law with

9. Upon jurisdiction, the Government relies on F. & M. Schaefer Brewing Co. v. United States, 2 Cir., 1956, 236 F.2d 889, certiorari granted March 25, 1957, 353 U.S. 907, 77 S.Ct. 667, 1 L.Ed.2d 662, and argued before the Supreme Court January 6, 1958, 78 S.Ct. 674; and on many other cases. Twin City relies also on that case and on Milton v. United States, 5 Cir., 1941, 120 F.2d 794; Woods v. Nicholas, 10 Cir., 1947, 163 F.2d 615; Matteson v. United States, 2 Cir., 1956, 240 F.2d 517; Rules 58 and 73 of Federal Rules of Civil Procedure.

which I find myself in disagreement. Moreover, in disagreeing with the Fourth Circuit, I fully appreciate that if my views were adopted by this Court there would be, subject of course to review by the Supreme Court, a difference in standard of valuation and a very substantial difference in the amount paid per acre for lands involved in the same condemnation area merely by reason of their lying in two different judicial circuits. I feel, however, that what I consider to be an error in the standard of appeal adopted by the Fourth Circuit and by this Court is of such importance in the field of condemnation that I am constrained to state the reasons for my disagreement.

The opinion of the majority states the questions to be: (1) Whether the district court applied the proper standard in considering the findings; (2) whether it erred in rejecting the findings of the commission as clearly erroneous; and (3) whether, in turn, the findings made by the district court are clearly erroneous. I think the first two questions merge, for if the district court (1) applied the proper standards then it (2) did not err in rejecting them, and vice versa. As to (3) I agree that if the district court could legally set aside the findings on the record before it, then, as to its own valuation, substituted for them, it is protected by the clearly erroneous rule and we would probably be compelled to affirm, although I think it is strongly against the weight of the evidence.

I think the question can be put more simply as follows:

Where, in condemnation proceedings, commissioners are appointed by the district court under Rule 71(A) (h) and the Commission makes a finding of valuation of lands taken, which valuation is later set aside by the district court as being clearly erroneous, does the Court of Appeals review the action of the commission to ascertain whether its valuation was clearly erroneous or does it review the judgment of the district court to ascertain whether his order setting aside the commission's findings and the findings substituted by him for those of the commission are clearly erroneous?

Although the opinion of the majority does say "we cannot say that the district court erred in rejecting the commission's findings as clearly erroneous," I think it clear that the court was not prepared to say "we think the commission's findings were clearly erroneous and we would set them aside." I think that unless this court can say that, then the language used by the majority attributes to the fact that the trial court acted in the matter some added but unexplained nebulous ingredient to the standard which we apply to our appeal here. I find no basis in law or logic for such proposition unless all it means is that we are to consider the fact that the trial court in effect expressed the legal opinion that it had the right to do what it did. It seems to me that the court means something more than that, but just what it is the opinion fails to say.

The opinion of the majority approves the holding of the Fourth Circuit where it is held:

"We review the District Judge, not the commissioners; and under Rule 52(a) we may not set aside his findings unless they are clearly erroneous."

I think this is contrary to the otherwise unbroken line of authorities of the federal appellate courts that have had to deal with this subject.

All parties agree that the scope of review by this Court is the same as exists when a district judge overrules findings of fact by a master or a referee in bankruptcy. We need not look beyond our own Circuit to find an authoritative decision as to our scope of review in such a situation. In Phillips v. Baker, 5 Cir., 165 F.2d 578, 581, this Court, speaking through Chief Judge Hutcheson, said:

"The duty to determine whether the referee's findings 'must be accepted' and whether the district judge has erred in not accepting

them is not the district judge's but ours." [1]

I think that Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515, establishes this proposition too clearly for question. The court there said:

"Our examination of the record leads us to acquiesce in these findings [of the master] since they are supported by substantial evidence and are not clearly erroneous and the court below [the Court of Appeals] correctly held that the District Court erred in failing to accept these findings and in creating a formula of compensation based upon a contrary view." 328 U.S. 680, 689, 66 S.Ct. 1187.

The Courts of Appeals of other circuits have expressed the same principle. As for instance in the Eighth Circuit it was stated in Sanitary Farm Dairies v. Gammel, 195 F.2d 106, 118, as follows:

"Opposite factual views might perhaps with equal right have been capable of being reached on the evidence and might have been required to be sustained by us, had they constituted initial determination in judicial administration. But here it was the master and not the court which was the initial fact appraiser, and the court could not, under rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A., refuse to recognize the master's findings or escape the conclusion to which they led, merely because of a difference in personal persuasion on the evidence or a dissatisfaction with the result reached."

See also Krinsley v. United Artists Corp., 7 Cir., 225 F.2d 579, and Ferroline Corp. v. General Aniline & Film Corp., 7 Cir., 207 F.2d 912, at page 920, where the Court of Appeals said:

"The threshhold question here then is the same as it was in the court below,—whether, as a matter of law, the master's findings of fact were clearly erroneous."

And see Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975, 976, 977, quoted supra in the opinion of the majority.

It is clear to me from reading the opinion of the Court that it does not intend to state categorically the valuation found by the commissioners was clearly erroneous. The nearest approach to such a statement is the Court's comment:

"We cannot say that the district court erred in rejecting the commission's findings as clearly erroneous, or that the findings of the district court are themselves clearly erroneous."

In light of the acceptance of the Fourth Circuit's view that the judgment of the trial court is itself protected by the clearly erroneous rule, this does not, it seems, amount to a statement by the court that the commissioners' findings were clearly erroneous. I can sympathize with the majority's refusal to hold that the Commission's findings are clearly erroneous. Such a holding on a record as replete with supporting evidence as this would come back to haunt us in every future case in which a litigant seeks a reversal of the findings of a trial court. In my opinion it would make a meaningless phrase out of the clearly erroneous doctrine. I think on the record which was the basis of the commission's findings, neither the district court nor we could legally hold their valuation clearly erroneous, and that therefore the judgment arrived at by the district court "by creating a formula of compensation based upon a contrary view," to use the language of the Supreme Court in the Mt. Clemens Pottery Company case, was wrong and must be reversed. It seems to me clear beyond doubt that viewing this Court as having the duty to approve the valuation found by the commission, unless clearly erroneous, we could not conceivably make such a finding on the record before us.

1. The entire paragraph from which this quotation is taken is quoted in the majority opinion.

There were four witnesses for the Government, all of whom were found by the commission to be competent appraisers and all of whom testified that the land was worth substantially less than the valuation arrived at by the commission. Without attempting to detail the entire testimony, it seems to me sufficient, in order to demonstrate the substantiality of this evidence, to comment briefly on some of the testimony. One of the witnesses, Ward, testified that he had been born and raised in the county in which most of the land lies, that he had bought and sold land in the very tracts involved, that he had cruised it for timber, that he had bought lands much closer to town than the lands here in issue within a reasonable period before the taking at substantially lower prices per acre than his estimate; that he had, for the purpose of this appraisal, inspected two of the tracts.[2]

Mr. Ward's testimony, which the commission used primarily as to a basis for its valuation, was to the effect that the lands as to which the commission found "there were no improved roads, no utility lines, no railroads, no bridges, no buildings, and practically no improvements of any nature," was worth approximately $31 per acre. In his appraisal I think it is clear from the record that in some instances he included some value for standing timber. To the figure testified to by Mr. Ward, the commissioners added some $12,000 for timber on the entire tract and also added $5 per acre which they found to be the value resulting from the assembling of the several tracts. The district judge, after setting aside the finding by the commissioners, found a valuation of approximately $80 per acre.

In addition to Mr. Ward's testimony there was evidence offered by two Augusta real estate dealers, both of whom testified to their knowledge of the property and of sales in connection with comparable tracts. Their testimony was that the property was worth substantially less than $31 an acre. So too was the evidence given by the Government's witness, Spencer Cooley, who had spent some four or five years studying the property in this area of condemnation as an appraiser for the Government. His testimony as to value was somewhat lower than Mr. Ward's and was based on his study of sales of land in the vicinity. In order to arrive at comparable sales he made a study of all of the sales in the area over a period of several years, finally considering 90 separate transfers of title. His testimony was supported finally by four particular sales which he considered most nearly comparable. Obviously, however, the consideration that he would give to all of the other sales in the area was a matter which would go to the weight of his testimony as an expert. All of this material was before the commissioners and properly entered into their appraisal of the worth and weight to be given to the opinions of the experts.

The trial court stated that:

"The most careful appraiser of the land as distinguished from the growing timber was by the witness Henderson. His experience as an appraiser lends weight to his valuation. The commissioners described him as a competent land evaluator [as they did also as to all other witnesses]. *My observation of him as a witness in other condemnation cases leads me to the same conclusion.* After a study of all the evidence *it is my view that his testimony is entitled to more weight than*

2. The district court commented adversely on the fact that before he personally inspected the other tracts for the purpose of this appraisal he had a heart attack and was unable to finish this inspection, overlooking completely his undisputed testimony that he had been familiar with these lands all his life. The opinion of the district judge, in discussing Mr.

Ward's failure to inspect the tracts in connection with this particular appraisal, mistakenly speaks of it as though he had at best only *appraised* two of the twelve tracts of land." (Emphasis added.) Obviously Mr. Ward *appraised* all of them, but *inspected* only two of them *in direct connection with this* appraisal.

that of the witnesses for the United States." (Emphasis added.)

This entire statement by the court is in terms of the evaluation of the weight to be given to the testimony of experts. Obviously there is much more to be considered by the tribunal, whose duty it is to make the findings based on such testimony, than a question of credibility in the usual sense. The appearance and plausibility, the apparent frankness and presence of or lack of interest, the degree of understanding of the factors that go into making up a proper basis for valuation, are all things that become apparent to the tribunal that hears and sees the witnesses. A holding by any court that the valuation here arrived at by the commissioners was clearly erroneous in spite of the substantial quality of the evidence would, it seems to me, be contrary to accepted principles on which such findings can be reviewed and set aside. As we have recently stated in Stephens v. United States, infra, in quoting with approval the unreported opinion of the district court whose judgment we affirmed:

"* * * it was for the Commission to determine the credibility of the witnesses and the weight to be given their testimony. The findings of the Commission have ample support in the evidence and it is not for the Court to substitute any finding that he might make from the evidence for that made by the Commissioner who observed and heard each and every witness testify."

And also:

"Since the award is within the range of the credited testimony, and the commission was not bound to accept the valuation of any particular witness, we may not re-weigh the evidence in a de novo review or reverse merely because the commission found a valuation more closely based upon the testimony of the Government appraisers than upon that of the landowner's witnesses." Stephens v. United States, 5 Cir., 235 F.2d 467, 469, 471.

I think that the trial court erred in setting aside the finding of valuation by the commissioners and that its judgment should be reversed with instructions to enter a judgment for the amounts fixed by the commissioners in their finding.

Rehearing denied: TUTTLE, Circuit Judge, dissenting.