Claude PARKS and wife, Corynne Parks, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18803.

United States Court of Appeals Fifth Circuit.

July 19, 1961.

T. George Chase, Naman, Howell, Smith & Chase, Waco, Tex., for appellants.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Raymond N. Zagone, Attys., Dept. of Justice, Washington, D. C., J. Edward Williams, Acting Asst. Atty. Gen., Russell B. Wine, U. S. Atty., San Antonio, Tex., Carl E. Mason, Asst. U. S. Atty., Waco, Tex., for appellee.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DE VANE, Senior District Judge.

RIVES, Circuit Judge.

On May 9, 1950, the United States filed in the district court a petition to condemn 2,462.8 acres of land comprising tracts situated in Hill and Bosque Counties, Texas, for the construction and operation of the Whitney Dam on the Brazos River. Five of the tracts totalling 341 acres were part of a 1,873-acre ranch owned by Claude Parks and his wife. A judgment on a declaration of taking vested title in fee simple with the right of immediate possession in the United States as of May 15, 1950

The Government deposited in court, as the estimated compensation for the lands of the Parks, the sum of $34,750.

The United States insisted on trial by jury, but the district court concluded that, because of the character, location and quantity of the lands being condemned, the issue of compensation should be determined by a commission of three persons appointed under Rule 71A(h), Federal Rules of Civil Procedure, 28 U.S.C.A. After a hearing held on September 17 and 18, 1957, the original commission filed its report on the next day, reporting simply the value of the 1873 acres immediately prior to the taking as $149,840 and the value of the remaining 1,532 acres immediately after the taking as $80,430, which produced an award of $69,410.

On September 27, 1957, the Government filed its objections to the report and award of the commission upon substantially the following grounds: that the award was excessive; that the United States, over its objection, had been deprived of a right of trial by jury and the appointment of the commission was unauthorized; that the report contained no sufficient findings of fact and conclusions of law; that the report was based upon erroneously admitted evidence. Subsequently, on October 8, 1957, the commission filed more detailed findings and conclusions. On June 13, 1958, after considering the motion of the United States to set aside the award, the transcript of the testimony adduced upon the hearing, and the briefs of the parties, the district court set aside the award of the commission and ordered that the cause be tried by a jury. Ten months later, on March 23, 1959, the court, over the objection of the United States, set aside that part of the order of June 13, 1958, directing a jury trial and appointed a different commission, largely "due to the fact that there are more than seventy condemnation suits pending in the Waco Division of the Western District of Texas."

The second commission heard testimony on May 12 and 13, 1959, and there-

after viewed the ranch. It filed its report on May 21, 1959. The second commission found that the highest and best use for which the property was adaptable was for farming and ranching; that the portion of the ranch not taken still has access to water on that part of Bear Creek not taken by the Government; that the property not taken is still served with a good road leading into the property and the residence of the owner; that some improvements on the property taken were moved, and on that not taken was "a good, well-built and comfortable residence." The commission awarded as the value of the 341 acres taken, $25,575, and as severance damages to the remaining 1,532 acres, $24,098.36, or a total award of $49,673.-36—nearly $20,000 less than the $69,-410 award of the first commission. The district court overruled the objections of the Parks and entered judgment affirming the award.

The appellants insist: (1) that the district court erred in setting aside the award of $69,410 made by the first commission; and (2) that the district court erred in overruling appellants' objections to the award of the second commission and in affirming that award, because (a) it was so inadequate as to be clearly erroneous, (b) it was based in part on testimony erroneously admitted over the appellants' objections, (c) it was based in part on extraneous evidence brought out by one of the commissioners concerning other lands not shown to be similar to that of appellants.

■ (1) Setting Aside Award of First Commission.—The district court did not state upon which one or more of the grounds assigned by the United States is set aside the award of the first commission. Because in the same order it directed that the cause be tried by a jury, it may be inferred that it sustained the Government's objection that the appointment of the Commission was unauthorized. The United States has not lost its right to insist on that objection because the district court later

changed its mind and, again over the Government's objection, appointed a second commission. Unless the character, location or quantity of the property or other reasons in the interest of justice justify the appointment of a commission, either party was entitled to a trial by jury. Rule 71A(h), Federal Rules of Civil Procedure; United States v. Buhler, 5 Cir., 1958, 254 F.2d 876.

The district court may have considered that the hearing before the first commission was so permeated with erroneously admitted evidence as to make the award untrustworthy. Neither of the parties has briefed or argued the details of the rulings as to testimony admitted before the first commission over the Government's objection, but, from a reading of the record, we list in the margin some of the rulings upon which the district court could have based its judgment setting aside the first commission's award.[1]

■ Finally, the district court may have considered the award of the first commission excessive and clearly erroneous. Rules 71A(h) and 53(e) (II), Federal Rules of Civil Procedure. Under the cited rules, the primary responsibility for determining whether the findings of the commission were clearly erroneous rested upon the district court. This Court reviews not the award of the commission but the judgment of the district court. United States v. Twin City Power Company of Georgia, 5 Cir., 1958, 253 F.2d 197.

■ In this state of the record, before the appellants are entitled to a reversal of the judgment setting aside

the award of the first commission, they must carry the burden of showing that no one of the several grounds of objection to that award would justify the district court in setting it aside. Clearly, the appellants have not sustained that burden.

(2) Overruling Appellants' Objections to the Award of the Second Commission and Affirming that Award.—

■ (a) Was it so inadequate as to be clearly erroneous?

Mr. Parks testified that at the time of the taking his entire 1,873 acres was worth $150.00 an acre, that the 341 acres was the choice part of the ranch, and after its taking, "without Bear Creek, I have no use for the balance." When pressed to state some value to the commission, he replied, "Oh, Ten Dollars." He could not recall that before the first commission he had assigned a value of $30.00 per acre for the remaining 1,532 acres. The general tenor of his testimony, shedding more heat than light on the issue, is indicated by his concluding remarks at one session.

"I have been pestered by this for the last nine years; and I told you about me being a lover of land. I didn't know a man could come in, with a white shirt on, and take your land after you had cut cord wood and hauled it with a span of mules. I wouldn't put up with the government pestering me for nine years, with which I have put up, for all the One Hundred Dollar bills you have in the courthouse.

"I just want to say that."

Some seven witnesses were introduced on behalf of the landowners. Their tes-

---

1. The first commission overruled the Government's objections (1) to the condition of Bear Creek during a drought in 1953, several years after the date of taking; (2) to the amounts paid by the County Commissioners several years after the date of taking for land for a road and the cost of fencing that road; (3) to photographs of the premises taken in 1957, many years after the taking; (4) to the qualifications of several of the landowners' witnesses as to market value; (5) to testimony of the landowner that by the re-located road he would enter the back of his residence and could reach the front only by motor boat; (6) to testimony that debris was subsequently deposited on the land; (7) to testimony that cockleburs, devil's claw and other obnoxious weeds had sprung upon the land and injured the cattle some seven years and more after the date of taking.

timony as to the value of the entire 1,873 acres at the time of the taking ranged from $100 to $150 per acre, and as to the value of the remaining 1,532 acres, their testimony ranged from nothing to $75 per acre. The qualifications of several of the witnesses to testify as to the market value of the land was questionable, and one admitted outright that he was not familiar with market values in that area as of the date of the taking.

On its part, the Government introduced two expert professional appraisers, each of whom carefully detailed the bases for his opinion. One gave his opinion of the reasonable cash market value of the entire ranch of 1,873 acres immediately prior to the taking on May 11, 1950 at $127,160, and that of the 1,532 remaining acres immediately after the taking at $87,942, or a net difference of $39,218. The other's like figures were $124,985 and $88,157.50, with a net difference of $36,827.50. The award of the second commission was far more than $10,000 in excess of the amounts to which either of the witnesses introduced by the Government testified.

Most important for purposes of review, the commissioners themselves went over the extensive ranch and viewed it, thus having the benefit of evidence which cannot be reproduced in the written record. We have carefully read and studied the record, not for the purpose of usurping the functions of the commission or those of the district court in its primary review of the commission's findings and award, but for the purpose of determining whether the judgment of the district court has been shown to be erroneous, and we cannot so find. See United States v. Twin City Power Company of Georgia, supra.

█ (b) Was the award of the second commission based in part on testimony erroneously admitted over the appellants' objections?

The testimony which the landowners considered so injurious was to the effect that they continued to have the actual use of Bear Creek, though not as a matter of right. The commission was careful to sustain objection to that testimony:

"The Chairman: If the government has given him the right to use Bear Creek for watering purposes and is permitting him to use it now only through sufferance, my opinion is the objection should be sustained."

It was only after the landowners had introduced evidence that the remaining 1,532 acres had become infested with noxious weeds that the chairman finally admitted such evidence:

"Mr. Clarke: We object to that. The government took that property and they could build a wall and keep the cattle from getting on that property, if they wanted to. The fact that Claude Parks' cattle were running down there anyhow is not relevant.

"Mr. Taylor: We have no duty to fence his cattle out, but if his cattle come on government land and get the seed of cockleburs, or something, and carry it back on his land, certainly we cannot be charged with that.

"The Chairman: I think, in view of his testimony as to how the devil's claws and cockleburs got on his property, it may be shown, if it can be, that the property was seeded with burs from other sources.

"I overrule the objection."

Further, without objection from either party, the commissioners viewed the land, according to appellants' brief, "they then visited the appellant's land and saw his cattle watering in Bear Creek and saw him cultivating the land as he had prior to the taking." Thus, this evidence came into the case without the objection of the appellants, and they are now in no position to complain.

█ (c) The appellants further complain that one of the commissioners in-

terrogated one of the witnesses concerning other lands not shown to be similar to the lands of the appellants. If the appellants claimed the lands to be dissimilar, they did not so comment at the time, nor did they register any objection to the commissioner's questions. Clearly, they are not now in position to complain.

We find no reversible error in the record, and the judgment is

Affirmed.